### STATE v. RICAREDO GOMEZ.

January Term, 1915.

·Present: POWERS, C. J., WATSON, TAYLOR, SLACK, AND HEALY, JJ.

Opinion filed October 29, 1915.

*Criminal Law—Skeleton Bill of Exceptions—Amendment in Vacation—P. S. 2322—Assignment of Counsel—P. S. 2261—Assignment of Interpreter—Assault with Intent to Kill—Specific Intent—Evidence—Character—Instructions—Improper Argument—Sufficiency of Record—Requested Instructions—Time for Making.*

Where respondent, before adjournment of the term of the county court whereat he was convicted, filed a skeleton bill of his exceptions, duly signed and "allowed subject to amendment," and reciting his exceptions only in general terms, an amended bill of exceptions, filed in vacation and more fully setting forth the exceptions referred to in the skeleton bill and also reciting exceptions not so referred to, is sufficiently in accord with the requirement of P. S. 2322 that questions of law decided by the county court in a criminal case shall, after verdict of guilty, upon respondent's motion, be allowed and placed upon the record and passed to this Court for final decision, and brings up for review as a part of the record all the exceptions therein recited, where the transcript is not made controlling.

There is no statute making it the duty of the county court in any circumstances to assign counsel at the State's expense to a respondent in a criminal case, and under P. S. 2261, providing that no compensation shall be paid by the State to counsel assigned to defend a respondent, except to counsel so assigned by the county court in cases of felony, the refusal of the county court to assign counsel at the expense of the State to respondent, charged with an assault with intent to kill, on the ground that it believed he had means to defend himself, was within its discretion, and not in violation of Art. 10 of the Constitution, providing that accused has a right to be heard by himself and his counsel, respondent being represented at the trial by counsel paid by him.

It was not error for the trial court to refuse respondent's request to be assigned an interpreter at the expense of the State, where the court ruled that the interpreter employed by the State, to whom respondent objected on the ground that he was unfriendly, could act for him, and another interpreter was in court on respondent's behalf and acted for him throughout the trial.

A ruling to which the record does not show that an exception was taken will not be reviewed.

Where it is proper to show by reputation a designated trait of a party's character at a particular time, it is permissible to show his reputation in that regard in any community where he had such reputation at that time.

In a prosecution for an assault with intent to kill, where the State's evidence as to the shooting and the surrounding circumstances was greatly at variance with the defence that respondent shot into the ground to induce fright, the argument of the State's attorney that respondent "formulated" his defence was not improper.

Where the bill of exceptions does not, but the transcript, which is not made a part thereof, does, show an objection by respondent to language of the State's attorney in argument, no question as to the propriety of such language is reserved.

In a prosecution for assault with intent to kill, where the evidence was clear that respondent did not make a designated statement, argument of the State's attorney, not saying that respondent did make the statement, but leaving it to the jury to determine whether he did or not, was not improper.

In order to convict of the statutory offence of an assault with intent to kill, the specific intent to kill must be alleged and proved.

In a prosecution for an assault with intent to kill, denounced by P. S. 5720, where the information charged that respondent committed the assault with the "wicked, wilful, malicious and felonious" intent to kill, and the court several times instructed that to convict the jury must find that respondent intended to kill the person assaulted, failure to instruct on the question of respondent's wilfulness and maliciousness was not erroneous, since the addition of the words "wilful" and "malicious" in the information added nothing to the State's burdens.

Requests for instructions at the close of the charge are made out of time, and so may properly be disregarded.

Any error in the instruction that there was a dispute as to whether respondent made a designated statement was cured by a supple-

mental charge, to which no exception was taken, leaving the jury to use their "own memories about that."

INFORMATION charging an assault with intent to kill. Plea, not guilty. Trial by jury, at the June Term, 1914, Orange County, *Fish,* J., presiding. Verdict, guilty, and judgment thereon. The respondent excepted. The transcript is referred to and made a part of the bill of exceptions. The body of the skeleton bill of exceptions is as follows: "This is a prosecution for assault with intent to kill on an information filed by the State's Attorney; plea, not guilty; trial by jury; verdict, guilty; judgment on verdict; exceptions by the respondent.

Previous to the impaneling of the jury, the respondent asked for the assignment of counsel at the expense of the State and to have the respondent's witnesses called at the State's expense. To the refusal of the court to assign counsel at that time and to make order at that time for the production of witnesses at the expense of the State, the respondent asked for and was allowed an exception.

During the trial certain evidence was offered by the State, objected to seasonably by the respondent and admitted by the court and to the admission of such evidence, the respondent was allowed an exception.

During the trial, the respondent offered certain evidence which was objected to by the State and excluded by the court and to the exclusion of such evidence the respondent was allowed exceptions.

The respondent seasonably made certain requests to the court to charge the jury as to the law of the case and to the failure of the court to charge as requested the respondent was allowed an exception.

The court in its charge to the jury made certain statements as to the law which were called to the attention of the court and objected to by the respondent and to the charge as given on the points objected to, the respondent was allowed an exception.

Exceptions allowed subject to amendment, mittimus stayed and cause passed to the Supreme Court."

*Richard A. Hoar* for the respondent.

*Frank S. Williams,* State's Attorney and *David S. Conant* for the State.

HEALY, J.   At the June Term, 1914, of Orange County Court the respondent was convicted of assault with intent to kill.

(1)   On the last day of the term, June 30, 1914, and before the adjournment thereof, there was filed in the office of the clerk of the court the respondent's exceptions in the form often called a "skeleton bill."   This bill recited in general terms that the respondent had been allowed exceptions to the refusal of the court to assign counsel and to order the production of witnesses for the respondent at the expense of the State, to the admission of certain evidence offered by the State, to the exclusion of certain evidence offered by the respondent, to certain parts of the charge of the court, and to the failure of the court to comply with certain of the respondent's requests to charge.   The evidence thus admitted or excluded, the parts of the charge and the requests thus referred to were not otherwise recited or specified.   The exceptions were "allowed subject to amendment." The respondent's amended exceptions in the form in which they now appear were allowed and signed October 31, 1914 and were filed November 4, 1914.   The State's Attorney has filed in this Court a motion,

(1)   To dismiss certain specified sections of the bill added by the amendments and not contained in the skeleton bill;

(2)   To strike from the record, "the alleged exceptions." The State claims that its motion should be complied with, because of the requirements of P. S. 2322, which provides that questions of law decided by the county court in criminal causes shall upon motion of the respondent be allowed and placed upon the record and that the same shall thereupon pass to the Supreme Court for final decision and that judgment, sentence and execution shall be respited and stayed in capital causes and in other causes only at the discretion of the court, and because (the State says) the court records are closed with the adjournment of the term and the court upon final adjournment of the term ceases to have any power over its records, except for the correction of clerical errors.   The State's motion makes no distinction between amendments related to or enlarging exceptions shown by the skeleton bill and amendments reciting exceptions

not shown at all by the skeleton bill. Under this motion the respondent's course as to his exceptions is held to have been sufficiently in accord with the construction given the statute cited in practice by bench and bar for many years and the motion is overruled.

(2)    The State contends that the respondent's exceptions to certain comments made by the State's Attorney in his argument to the jury should not be considered for the reason (it says) that in the original or skeleton bill "there was no exception saved as to argument of counsel and even though the Court should hold that the trial court has the right to allow the amendment of exceptions after the rising of court, yet the right of amendment cannot be extended so as to include a subject-matter, which does not appear in the original bill of exceptions."

The power of the court as to its records after the rising of the term can be no greater in civil suits than in criminal cases, except as in the former it may be extended by P. S. 1981. This section provides for the filing of exceptions in civil suits within thirty days from the rising of court, and this is but a limited extension of the time for signing and filing. Under this statute the practice has been to file a skeleton bill within the thirty days and to revise and amend it at a later time convenient for the trial judge and counsel. The rules of court countenance this practice.

County court rule 28 and section 4 of rule 44. This Court has noticed it. *McKinstry* v. *Collins et al.,* 76 Vt. 221, 56 Atl. 985; *Phelps Dodge & Co.* v. *Conant & Co.,* 30 Vt. 277; *Hall & Chase* v. *Simpson,* 63 Vt. 601, 22 Atl. 664; *Nixon* v. *Phelps,* 29 Vt. 198. The statutes imply that it exists. P. S. 1371; P. S. 1373; P. S. 1984.

. In the opinion in *Phelps Dodge & Co.* v. *Conant & Co.,* *supra,* Chief Judge Redfield says: "The statute vests the presiding judge with the power of the court in allowing and placing exceptions upon the record and from this he has been allowed an incidental power to amend the exceptions according to the facts up to the time of trial in this Court. This procedure is a loose one and attended often with embarrassments. But it seems the only practical one with us. We do not make the judge's minutes the basis of the trial *in banc* as is done in the English courts in revising trials *nisi prius.* But here a formal bill of exceptions is placed upon the record, the same as when

a writ of error is expected to be brought. Before this is done the exceptions should be finally settled on hearing. But the haste with which business is transacted with us often precludes this and the exceptions have to be revised after they are filed very often.''

''The course of practice at common law,'' says the Court in *Higbee* v. *Sutton,* 14 Vt. 555, ''required the bill of exceptions to be reduced to writing and presented to the judge during the term, otherwise it could not be allowed. * * * When bills of exceptions, as the foundation of writs of error came into general use in this State, the convenience of the court and bar induced the practice of settling them during vacation and such, to some extent, was the practice at common law, although confessedly irregular.''

Since the skeleton bill in a civil suit filed within thirty days of the rising of court may be amended after the expiration of said thirty days, why may not the skeleton bill in a criminal case filed before the rising of the term be amended thereafter?

The statute cited by the State provides a means whereby a respondent may take his case to the Supreme Court; in a technical view it also provides the court with the light in which to decide how it shall exercise its discretion in the matter of staying judgment, sentence and execution—yet in a practical view this decision is based upon the court's recollection of the points raised or upon its own or the reporter's minutes of objections and exceptions and must be exercised before the adjournment of the term.   (See *State* v. *Webb,* 89 Vt. 326, 95 Atl. 892).   No light is given to the trial court as to this discretion by the statement in the skeleton bill that the respondent had been allowed exceptions to the ''admission of certain evidence offered by the State, to the exclusion of certain evidence offered by the respondent'' and none is lost by the omission to state ''the respondent excepted to certain comments of counsel.''

The statute in its original form (No. 2, Acts of 1828) provides that the question of law referred to ''may, after verdict of guilty is returned, if, upon consideration of the difficulty and importance of such question, such court shall so direct and not otherwise, be allowed and placed upon the record, and the same shall thereupon pass to the Supreme Court.''   Now the statute provides that the question *shall* upon motion of the respondent be allowed and placed upon the record, etc.

The contention of the State takes insufficient notice of the limitations of reporting cases and preparing transcripts and of the demands upon court, counsel and reporters in term time, is contrary to a long settled practice and is not 'sustained. Our conclusions are that in criminal cases a bill of exceptions should be filed before the adjournment of the term, (see *State* v. *Webb,* *supra,*) and that the provision in a bill thus filed, ''Exceptions allowed subject to amendment,'' brings before us as part of the record all that appears in the amended bill when the transcript is not made controlling.

(3) Several days prior to the impaneling of the jury, the respondent filed what the. exceptions call an affidavit, setting forth that he had no property and no money to employ counsel and requesting the court to assign counsel to defend him at the expense of the State. This instrument was not sworn to, but in other respects it conformed to section 3 of county court rule No. 42. The court refused to comply with this request but advised counsel that an assignment might be made later. Later a second affidavit nearly like the first, properly sworn to, and containing the same request, was filed. Thereupon the court again refused compliance on the ground that it believed the respondent had means with which to defend himself. To this refusal the respondent excepted. The respondent was represented throughout the trial by the attorney who had prepared the cause for trial, using funds of the respondent for that purpose. The respondent had requested that this attorney be assigned to defend him. Another attorney representing the Spanish Consul acted for the respondent throughout the trial. The exception is not to a refusal to assign counsel, but to a refusal to assign counsel to be paid by the State. The claim of respondent's counsel that under Article 10 of the Constitution of Vermont it was the duty of the court to assign counsel at the State's expense is without merit. There is no statute making it the duty of the court to assign counsel at the State's expense under any conditions. The only statute touching this matter is P. S. 2261, which merely provides that no compensation shall be paid by the State to counsel assigned to defend a respondent in a criminal proceeding except to counsel assigned by the county court in capital causes, or in causes where punishment is by imprisonment in the State's prison, etc. If the court believed that the respondent had means with which to defend himself, it was its

duty to refuse to assign counsel at the State's expense. This whole matter was within the court's discretion. This discretion appears to have been judicially exercised. The exception is overruled.

(4) The respondent asked the court to appoint at the expense of the State an interpreter for the respondent, he being a Spaniard unable to speak or read the English language. The court refused to make this appointment, but ruled that the interpreter who was employed by the State could act in behalf of the respondent. Such an interpreter, who was competent to act, was in attendance and acted as interpreter in the case. The respondent objected to the appointment of the interpreter selected by the State, claiming that he was incompetent, unfriendly to the respondent, a witness for the State and a relative of Fernandez who was assaulted. The court overruled the objection and appointed this interpreter, to which ruling the respondent excepted. An interpreter other than the one in attendance for the State was in court in behalf of the respondent and acted for him throughout the trial. The respondent was not entitled to another interpreter at the expense of the State, under the circumstances detailed, and it was not error to permit the respondent the use of one to whom he objected.

(5) The respondent before the trial "requested the court that the State subpoena witnesses for the respondent at the expense of the State, which witnesses were necessary in the proper defence of the respondent." The court overruled this request. The bill does not show that the respondent excepted to the ruling so no consideration is given it.

(6) The respondent put in issue his character as to quarrelsomeness. To rebut his evidence thereon, the State called a witness who was asked if the respondent "had a reputation in and around Williamstown at the time of the shooting as quarrelsome." Without objection the witness replied that he had and that it was bad. Under cross-examination this witness testified that he had never been in Williamstown, but had heard the respondent's reputation talked of in Northfield and Montpelier twelve or more miles away. Thereupon the respondent's counsel moved that the testimony of this witness as to the respondent's reputation be stricken from the record. This motion was overruled and an exception allowed to the respondent. The respondent had lived in Williamstown but a few weeks at the time of

the assault and prior thereto he had lived in West Berlin and Montpelier. The issue was as to a phase of the respondent's character which both the prosecution and defence were seeking to prove by evidence as to his reputation. To establish this phase at a given time it was permissible to show his reputation at that time in any locality where he then had a reputation in that respect. Wigmore on Evidence, Sec. 60, 1608, 1616. Since the testimony of this witness as to the respondent's reputation in Northfield and Montpelier would have been admissible in direct and since the extent of his knowledge was shown by cross-examination, it was within the court's discretion to refuse to strike from the record his testimony as to the respondent's reputation.

(7)   During the State's Attorney's argument to the jury. he argued that the respondent formulated his defence and brought it there. The respondent had testified that he bought the 25 calibre automatic revolver used in the assault to. celebrate the fourth of July, and it was in this connection that the State's Attorney was claiming that the defence was formulated by the respondent. The cartridges used were full steel jacketed. The State's Attorney submitted to the jury to find what the facts were in this regard but did not withdraw his statement. The respondent's objection to this argument was overruled and an exception allowed him. When the respondent's counsel objected to this argument he said: ''What I am objecting to is the formulating about the shooting affair.'' The exact meaning and scope of this exception is not made entirely clear by exceptions or transcript, but we take it to mean that, while the argument complained of was made in connection with comment on the respondent's testimony as to why he bought the revolver, it nevertheless related to the defence generally. The respondent's brief treats it that way. The State's evidence as to the shooting and the circumstances attending it were so at variance with the defence that the charge that the defence was ''formulated'' was not improper.

(8)   In his closing argument the State's Attorney stated that Emilio Fernandez when assaulted said: ''Let it drop.'' There was no evidence that Fernandez said it. The State's Attorney disclaimed making any such statement but the exceptions say that he made it. Upon being asked by the court as to what he did say, the State's Attorney replied, ''I say this, I ask the jury to search their memories and remember the evi-

dence, if there were not witnesses that testified that Emilio Fernandez did make that statement, and if there was not a dispute among the witnesses as to just who it was that said these words.'' Thereupon respondent's counsel said, ''To that statement I claim an exception also because there is no dispute about who said the words, their own witness Aja said that Mr. Gomez said, 'Let it go, let's drop it, let's go home,' '' and referred to other testimony of like import. Thereupon the court said, ''The court does not remember about that, you may stand on your rights, Mr. State's Attorney.'' And the State's Attorney continued, ''But I want the record to show I haven't argued as to what anybody did say; that I asked the jury to remember the evidence and for them to say who it was and what the evidence was, and that was all the argument I was making on the subject.'' The respondent's objection was overruled and an exception allowed him. The only exception that is before us in this connection is that shown by the bill which is based on the only objection shown by the bill. This was to the State's Attorney's reply to the court and not to his first statement that Fernandez made the statement under discussion. This exception is not briefed by the respondent. The transcript shows an objection by the respondent to the first statement (this is briefed by the respondent) but the exceptions do not and therefore the first objection is not before us. The reply to the court was merely requiring the jury to search their memories and remember if there were not witnesses who testified that Fernandez made the statement under discussion, if there was not a dispute among the witnesses as to who ''said these words.'' The prosecutor's other remarks quoted above were to the same effect. Although the evidence was clear that Fernandez did not make the statement, the prosecutor in the argument excepted to did not say he did, but left it to the jury to determine.

(9) The respondent filed no requests to charge. At the close of the charge he excepted ''to the failure of the court to charge upon the question of the wilfulness and maliciousness of the respondent as set up in the information.'' The information charges that the respondent ''wilfully, maliciously and feloniously in and upon one Emilio Fernandez * * * an assault did make and him * * * did beat, wound, shoot and pierce * * * with the wicked, wilful, malicious and felonious intent him * * * then and there to kill, contrary to the form, force

and effect of the statute," etc. The respondent's brief upon this exception treats only of the words, "wilful" and "malicious" modifying the word "intent" so we will treat only of them. The court's definition of assault is taken to be correct for the respondent took no exception thereto and does not now attack it. The respondent claimed that he intended to fire into the ground to frighten Fernandez, who (he said) had assaulted him first, but not to injure him. "Thus," he says in his brief, "intent became material and should have been fully and fairly charged." But in order to constitute the offence proof of a specific intent to kill was necessary, whatever the respondent's defence. This intent "is the body of the aggravated offence." *State* v. *Taylor,* 70 Vt. 1-9, 39 Atl. 447, 42 L. R. A. 673, 67 Am. St. Rep. 648. The crime as charged is a statutory offence, P. S. 5720; *State* v. *Reed,* 40 Vt. 603; *State* v. *Daley,* 41 Vt. 546. The information does not charge an assault with intent to murder, but an assault with intent to kill. The addition of the words, "wilful" and "malicious" before the word, "intent" in the information, which counts on the statute, added nothing to the burdens which the State had to discharge to establish the offence charged. The assault being established it was, as we have seen, necessary for the State to prove the respondent's intent to kill. It is perfectly clear that the court plainly, fully and fairly so charged. The jury was told several times that in order to find the respondent guilty of the main offence it must find that the respondent intended to kill Fernandez. The exception is overruled. When the exception just disposed of was taken the respondent asked the court to charge that the gist of the offence alleged in the complaint was the wilful and malicious intent, that the jury must find that what the respondent did he did wilfully and maliciously, with the wilful and malicious intent to kill the assaulted. The exceptions continue, "And to the failure and refusal of the court to so charge the jury, the respondent asked for and was allowed an exception." These requests were made out of time and therefore, if not complied with, might properly be disregarded.

What our holding might be if called upon to consider whether they had been sufficiently complied with, is indicated by what has been said as to the preceding exception.

(10) The State's evidence tended to show that the respondent left Williamstown and attempted to escape immediately

after the affray. The court charged the jury with reference to the flight of the respondent. The court said the respondent testified that he was told that if he did not go they would hang him. The court further said, "But that's in dispute, some dispute as to whether he said that or not." The respondent excepted to that part of the charge of the court for that there was no such evidence in the case, claiming that nobody disputed that fact or the testimony of the respondent on that point, and that Fernandez made the statement to him which caused him to run away. The respondent then asked the court to charge the jury as to what the testimony on that point was. The court refused so to do except as indicated in the supplemental charge, and the respondent was allowed an exception. The respondent testified that he left the house where the complaining witness was after the shooting because Orentio Fernandez told him if he didn't go he would hang him, that he then went to Barre and kept on going until he was arrested. But Orentio Fernandez testified, "I never told him to skip, I told him to go and see Emilio." Counsel have treated the court's statement as meaning that there was some dispute as to whether the respondent was told if he did not go they would hang him and we will treat it likewise. The court's statement was justified for there was a basis in the testimony for such a dispute as the court said existed. There was no good reason why the court should charge further pursuant to the respondent's request as to what "the testimony on that point was." In its supplemental charge, however, the court said, "Now it is suggested that there is no conflict in the testimony about the respondent being told that he would be hanged if he stayed there and that accounting for his flight. The evidence is before you and you must use your own memories about that. It is claimed on the part of the respondent that this older man who was the first witness, I think, told you that, and that had not been denied here upon the stand. You will remember how that was." Had there been a misstatement of the evidence in the particulars complained of this supplemental charge would have taken care of it, for the whole matter was left to be determined by the jury who were to use their "own memories about that." (See *Green* v. *Dodge,* 79 Vt. 73-82, 64 Atl. 499.) And the supplemental charge may be treated as sufficient for no exception was taken to it.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*