BENJAMIN S. COLLETTE *v.* SEYMOUR EDGERTON.

October Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed November 7, 1934.

*Benjamin N. Hulburd* for the defendant.

*James B. Donoway* for the plaintiff.

SHERBURNE, J. This was an action to recover an alleged balance due for labor. Verdict and judgment were for the plaintiff. The case comes here upon exceptions by the defendant.

One Frank Collette, a brother of the plaintiff, testified as a witness for him. Subsequently he was permitted to act as interpreter for the plaintiff over the objection of the defendant that he was incompetent by reason of his being related to the plaintiff and of his having testified for him.

The plaintiff is a deaf mute. He attended a school for the deaf and dumb, and learned to carry on a conversation to some extent. He understands what is said to him by reading the speaker's lips, and can make articulate sounds which a person familiar with him can understand. It appeared that the defendant could converse with him to some extent, although it was sometimes necessary to resort to writing. For the convenience of the court and jury, an interpreter was necessary.

The person to be appointed as an interpreter rests in the discretion of the trial court, as does his competency to act. 28 R. C. L. 587. In a number of cases a relative or a witness has been permitted to act as an interpreter. In *Ruston's Case,*

(1786) 1 Leach. C. L. (Eng.) 408, a sister was held competent to act as an interpreter of a deaf and dumb witness. The next friend of an infant plaintiff was held competent to act as an interpreter in *Swift* v. *Applebone,* (1871) 23 Mich. 252. The father of an infant plaintiff was held competent in *Western & A. R. Co.* v. *Deitch,* (1911) 136 Ga. 46, 70 S. E. 798. In *Chicago & A. R. Co.* v. *Shenk,* (1890) 131 Ill. 283, 23 N. E. 436, a witness was held competent to act as an interpreter. In *People* v. *Ramirez,* (1880) 56 Cal. 533, 38 A. R. 73, a witness was held not to be disqualified to act as an interpreter. These cases should not be taken as recommending the practice, as it will be noted that the necessities of the case and availability have much to do with the decisions. In *State* v. *Thompson,* (1896) 14 Wash. 285, 44 Pac. 533, a criminal case reversed upon another ground, the court stated that an interpreter should not be a witness nor an interested party.

In the instant case the interpreter simply endeavored to repeat to the witness in the English language the questions propounded so as to enable the witness to read his lips. He then interpreted the answers of the witness. A few instances are pointed out where the interpreter slightly departed from the rôle of interpreter, but these appear to have been unintentional and to have been done in an attempt to make the witness better understand what was asked. All could understand what the interpreter said to the witness. The defendant was present and was familiar with the plaintiff's means of communication. No question was made but that the interpreter gave the correct answers. The situation is in some respects like that in *State* v. *Gomez,* 89 Vt. 490, 497, 96 Atl. 190. In that case the respondent asked the court to appoint at the expense of the State an interpreter for the respondent, he being a Spaniard unable to speak or read the English language. The court refused to make this appointment, but ruled that the interpreter who was employed by the State could act in behalf of the respondent. Such an interpreter, who was competent to act, was in attendance and acted as interpreter in the case. The respondent objected to the appointment of the interpreter selected by the State, claiming that he was incompetent, unfriendly to the respondent, a witness for the State, and a relative to Fernandez who was assaulted. The court overruled the objection and appointed this interpreter, to which ruling the respondent excepted. An inter-

preter other than the one in attendance for the State was in court in behalf of the respondent and acted for him throughout the trial. It was held that the respóndent was not entitled to another interpreter at the expense of the State under the circumstances.

We fail to find that the defendant has been harmed in any way by permitting Frank Collette to act as interpreter. We do not commend the practice of appointing interested persons as interpreters, however.

■ The verdict was for the amount of the plaintiff's specifications. The remaining exception has to do with the overruling of a motion to set this verdict aside on the ground that it was excessive. It appeared that the plaintiff was at defendant's farm from August, 1930, to November, 1932. His specifications only contain charges for the months for which he says he was not fully paid. The defendant showed that he had paid in one way or another the sum of $206.04. This sum was not contested, only its application, it being the claim of the plaintiff that it had been applied upon the months for which the specifications showed no charge. The specifications only showed credits to the amount of $44.54 for items specifically covered by the above sum, and it is defendant's contention that the difference between $206.04 and $44.54 should be subtracted from the plaintiff's specifications and that the verdict could not exceed the remainder. He says that there is no evidence that the defendant has had credit for the said sum of $206.04 except for the sum of $44.54.

There was a conflict in the evidence as to the terms upon which the plaintiff labored for the defendant. The defendant claimed that from November, 1930, to the time the plaintiff left in 1932 it was understood that the plaintiff should work for his board, clothing, tobacco, and necessary spending money. The plaintiff, on the other hand, claimed that he worked for wages except for the months of January and February, 1932, when he was only to get his board. The defendant testified that he did not pay him any wages as such after November, 1930, while the plaintiff testified that he was paid wages for the months not set down in his specifications except for the months of January and February, 1932. If the plaintiff was correct he must have received much more than the sum of $206.04, so we think that a fair inference could have been drawn by the jury that the de-

fendant had credit for such sum on account of the months for which the specifications claim nothing. In the charge to the jury, to which no exception was taken, the court clearly summed up the respective claims of the parties and stated the plaintiff's contention to be, that the items covered by this sum had been applied as part of a much larger sum he had received toward payment for those months for which he had made no charge in his specifications.

The defendant, both in his argument upon the motion below and in his brief here, speaks of a concession on the part of the plaintiff which in substance entitled him to have this sum of $206.04 less $44.54 deducted from plaintiff's specifications. The defendant mistakes what was said. Plaintiff's counsel said: "We are not contesting that sum, simply its application. That it has been applied upon the months for which he has made no charge." This language agrees ,with that portion of the charge above referred to, and does not bear out defendant's contention.

*Judgment affirmed.*