## BETTS *v.* BRADY, WARDEN.

No. 837. Argued April 13, 14, 1942.—Decided June 1, 1942.

---

[9] *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90; *Helvering* v. *Reynolds*, 313 U. S. 428; *White* v. *Winchester Country Club*, 315 U. S. 32.

456

*Messrs. Jesse Slingluff, Jr.* and *G. Van Velsor Wolf* for petitioner.

*Messrs. William C. Walsh,* Attorney General of Maryland, and *Robert E. Clapp, Jr.,* Assistant Attorney General, with whom *Mr. Morton E. Rome* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner was indicted for robbery in the Circuit Court of Carroll County, Maryland. Due to lack of funds,

he was unable to employ counsel, and so informed the judge at his arraignment. He requested that counsel be appointed for him. The judge advised him that this would not be done, as it was not the practice in Carroll County to appoint counsel for indigent defendants, save in prosecutions for murder and rape.

Without waiving his asserted right to counsel, the petitioner pleaded not guilty and elected to be tried without a jury. At his request witnesses were summoned in his behalf. He cross-examined the State's witnesses and examined his own. The latter gave testimony tending to establish an alibi. Although afforded the opportunity, he did not take the witness stand. The judge found him guilty and imposed a sentence of eight years.

While serving his sentence, the petitioner filed with a judge of the Circuit Court for Washington County, Maryland, a petition for a writ of *habeas corpus* alleging that he had been deprived of the right to assistance of counsel guaranteed by the Fourteenth Amendment of the Federal Constitution. The writ issued, the cause was heard, his contention was rejected, and he was remanded to the custody of the prison warden.

Some months later, a petition for a writ of *habeas corpus* was presented to Hon. Carroll T. Bond, Chief Judge of the Court of Appeals of Maryland, setting up the same grounds for the prisoner's release as the former petition. The respondent answered, a hearing was afforded, at which an agreed statement of facts was offered by counsel for the parties, the evidence taken at the petitioner's trial was incorporated in the record, and the cause was argued. Judge Bond granted the writ but, for reasons set forth in an opinion, denied the relief prayed and remanded the petitioner to the respondent's custody.

The petitioner applied to this court for certiorari directed to Judge Bond. The writ was issued on account of the importance of the jurisdictional questions involved

and conflicting decisions [1] upon the constitutional question presented. In awarding the writ, we requested counsel to discuss the jurisdiction of this court, "particularly (1) whether the decision below is that of a court within the meaning of § 237 [2] of the Judicial Code, and (2) whether state remedies, either by appeal or by application to other judges or any other state court, have been exhausted."

1. Sec. 237 of the Judicial Code declares this court competent to review, upon certiorari, "any cause wherein a final judgment . . . has been rendered . . . by the highest court" of a State "in which a decision could be had" on a federal question. Was Judge Bond's judgment that of a court within the meaning of the statute? Answer must be made in the light of the applicable law of Maryland.

Art. 4, § 6 of the State Constitution provides: "All Judges shall by virtue of their offices be Conservators of the Peace throughout the State; . . ." Sec. 1 of Art. 42 of the Public General Laws of Maryland (Flack's 1939 Edition) invests the Court of Appeals and the Chief Judge thereof, the Circuit Courts for the respective counties, and the several judges thereof, the Superior Court of Baltimore City, the Court of Common Pleas of that city, the Circuit Court and Circuit Court No. 2 of Baltimore City, the Baltimore City Court, and the judges of the said courts, out of court, and the Judge of the Court of Appeals from the City of Baltimore, with power to grant writs of *habeas corpus* and to exercise jurisdiction in all matters pertaining thereto.

---

[1] *In re McKnight*, 52 F. 799; *Wilson* v. *Lanagan*, 99 F. 2d 544; *Boyd* v. *O'Grady*, 121 F. 2d 146; *Carey* v. *Brady*, 125 F. 2d 253; *Commonwealth ex rel. Schultz* v. *Smith*, 139 Pa. Super. Ct. 357, 11 A. 2d 656; *Commonwealth ex rel. McGlinn* v. *Smith*, 344 Pa. 41, 24 A. 2d 1.

[2] 28 U. S. C. § 344 (b).

Although it is settled that the grant to the Court of Appeals of the power to issue the writ is unconstitutional and void,[3] and although the statute does not confer on individual judges of the Court of Appeals the power to issue a writ and proceed thereon, nevertheless, those judges, as conservators of the peace, have the power under the quoted section of the Constitution.[4] In any event, Judge Bond is the Chief Judge of the Court of Appeals and the judge of that court from the City of Baltimore and, as such, is empowered to act.

Sections 2 to 6, inclusive, 9 to 12 inclusive, and 17 of the statute prescribe the procedure governing the issue of the writ, its service, the return, and the hearing. No question is made but that Judge Bond complied with these provisions. It is, therefore, apparent that in all respects he acted in a judicial capacity and that, in his proper person, he was a judicial tribunal having jurisdiction, upon pleadings and proofs, to hear and to adjudicate the issue of the legality of the petitioner's detention. If Judge Bond had been sitting in term time as a member of a court, clothed with power to act as one of the members of that court, his judgment would be that of a court within the scope of § 237. Doubt that his judgment in the present instance is such arises out of our decision in *McKnight* v. *James,* 155 U. S. 685, where we refused to review the denial of a discharge by a judge of an inferior court of Ohio who issued the writ and heard the case at chambers. It appeared that the petitioner had addressed his petition to a judge of the Circuit Court instead of the court itself; and that, for this reason, the order of the judge was not reviewable by the Supreme Court of Ohio as it would have been had the writ been addressed

---

[3] *State* v. *Glenn,* 54 Md. 572, 596; *Sevinskey* v. *Wagus,* 76 Md. 335, 25 A. 468.

[4] *Ex parte O'Neill,* 8 Md. 227; *Ex parte Maulsby,* 13 Md. 625.

to the Circuit Court though heard by a single judge. The petitioner had not exhausted his state remedy since, though he could have obtained a decision by the highest court of the State, he had avoided doing so, and then sought to come to this court directly from the order of the Circuit Judge on the theory that that judge's order was the final order of the highest court of the State which could decide his case. In a later decision, we referred to this and other cognate cases as deciding that appeals do not lie to this court from orders by judges at chambers,[5] but the fundamental reason for denying our jurisdiction was that the appellant had not exhausted state remedies.

In view of what has been said of the power of Judge Bond as a judicial tribunal to hear and finally decide the cause, and of the judicial quality of his action we are of opinion that his judgment was that of a court within the intendment of § 237.

2. Did the judgment entered comply with the requirement of § 237 that it must be a final judgment rendered by the highest court in which a decision could be had? Again answer must be made in the light of the applicable law of Maryland. The judgment was final in the sense that an order of a Maryland judge in a *habeas corpus* case, whatever the court to which he belongs, is not reviewable by any other court of Maryland except in specific instances named in statutes which are here inapplicable.[6] It is true that the order was not final, and the petitioner has not exhausted state remedies in the sense that in Maryland, as in England, in many of the States, and in the federal courts, a prisoner may apply succes-

---

[5] *Craig* v. *Hecht,* 263 U. S. 255, 276.

[6] *Bell* v. *State,* 4 Gill. 301; *Ex parte O'Neill,* 8 Md. 227; *In re Coston,* 23 Md. 271; *Coston* v. *Coston,* 25 Md. 500; *State* v. *Glenn,* 54 Md. 572; *Annapolis* v. *Howard,* 80 Md. 244, 30 A. 910; *Petition of Otho Jones,* 179 Md. 240, 16 A. 2d 901.

sively to one judge after another and to one court after another without exhausting his right.[7] We think this circumstance does not deny to the judgment in a given case the quality of finality requisite to this court's jurisdiction. Although the judgment is final in the sense that it is not subject to review by any other court of the State, we may, in our discretion, refuse the writ when there is a higher court of the State to which another petition for the relief sought could be addressed,[8] but this is not such a case. To hold that, since successive applications to courts and judges of Maryland may be made as of right, the judgment in any case is not final, would be to deny all recourse to this court in such cases.

Since Judge Bond's order was a final disposition by the highest court of Maryland in which a judgment could be had of the issue joined on the instant petition we have jurisdiction to review it.

3. Was the petitioner's conviction and sentence a deprivation of his liberty without due process of law, in violation of the Fourteenth Amendment, because of the court's refusal to appoint counsel at his request?

The Sixth Amendment of the national Constitution applies only to trials in federal courts.[9] The due process clause of the Fourteenth Amendment does not incorporate,

---

[7] Judge Bond intimates that § 3 of Art. 42, as amended by Laws 1941, c. 484 permits the use of a rule to show cause (cf. *Holiday* v. *Johnston,* 313 U. S. 342) or other form of preliminary inquiry to avoid the necessity of the issue of a writ and a hearing where a redundant petition is filed disclosing no new matter. See, *Salinger* v. *Loisel,* 265 U. S. 224, 231–232. He determined, however, in this case to issue the writ and afford a hearing.

[8] *Tenner* v. *Dullea,* 314 U. S. 692.

[9] *United States* v. *Dawson,* 15 How. 467, 487; *Twitchell* v. *Pennsylvania,* 7 Wall. 321, 325; *Spies* v. *Illinois,* 123 U. S. 131, 166; *In re Sawyer,* 124 U. S. 200, 219; *Brooks* v. *Missouri,* 124 U. S. 394, 397; *Eilenbecker* v. *District Court,* 134 U. S. 31, 34, 35; *West* v. *Louisiana,* 194 U. S. 258, 263; *Howard* v. *Kentucky,* 200 U. S. 164, 172.

as such, the specific guarantees found in the Sixth Amendment,[10] although a denial by a State of rights or privileges specifically embodied in that and others of the first eight amendments may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth.[11] Due process of law is secured against invasion by the federal Government by the Fifth Amendment, and is safeguarded against state action in identical words by the Fourteenth. The phrase formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.[12] In the application of such a concept, there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules, the application of which in a given case may be to ignore the qualifying factors therein disclosed.

The petitioner, in this instance, asks us, in effect, to apply a rule in the enforcement of the due process clause. He says the rule to be deduced from our former decisions is that, in every case, whatever the circumstances, one charged with crime, who is unable to obtain counsel, must be furnished counsel by the State. Expressions in the

---

[10] *Hurtado* v. *California*, 110 U. S. 516; *Maxwell* v. *Dow*, 176 U. S. 581; *West* v. *Louisiana*, 194 U. S. 258; *Twining* v. *New Jersey*, 211 U. S. 78; *Frank* v. *Mangum*, 237 U. S. 309; *Snyder* v. *Massachusetts*, 291 U. S. 97; *Palko* v. *Connecticut*, 302 U. S. 319.

[11] Compare *Twining* v. *New Jersey*, 211 U. S. 78, 98; *Powell* v. *Alabama*, 287 U. S. 45; *Palko* v. *Connecticut*, 302 U. S. 319, 323 ff.

[12] Compare *Lisenba* v. *California*, 314 U. S. 219, 236–237.

opinions of this court lend color to the argument,[13] but, as the petitioner admits, none of our decisions squarely adjudicates the question now presented.

In *Powell* v. *Alabama*, 287 U. S. 45, ignorant and friendless negro youths, strangers in the community, without friends or means to obtain counsel, were hurried to trial for a capital offense without effective appointment of counsel on whom the burden of preparation and trial would rest, and without adequate opportunity to consult even the counsel casually appointed to represent them. This occurred in a State whose statute law required the appointment of counsel for indigent defendants prosecuted for the offense charged. Thus the trial was conducted in disregard of every principle of fairness and in disregard of that which was declared by the law of the State a requisite of a fair trial. This court held the resulting convictions were without due process of law. It said that, in the light of all the facts, the failure of the trial court to afford the defendants reasonable time and opportunity to secure counsel was a clear denial of due process. The court stated further that "under the circumstances . . . the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process," but added: "Whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that it is necessary now to decide, as we do decide, is that, in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign

---

[13] *Powell* v. *Alabama*, 287 U. S. 45, 73; *Grosjean* v. *American Press Co.*, 297 U. S. 233, 243, 244; *Johnson* v. *Zerbst*, 304 U. S. 458, 462; *Avery* v. *Alabama*, 308 U. S. 444, 447.

counsel for him as a necessary requisite of due process of law, . . ."

Likewise, in *Avery* v. *Alabama,* 308 U. S. 444, the state law required the appointment of counsel. The claim which we felt required examination, as in the *Powell* case, was that the purported compliance with this requirement amounted to mere lip service. Scrutiny of the record disclosed that counsel had been appointed and the defendant had been afforded adequate opportunity to prepare his defense with the aid of counsel. We, therefore, overruled the contention that due process had been denied.

In *Smith* v. *O'Grady,* 312 U. S. 329, the petition for *habeas corpus* alleged a failure to appoint counsel but averred other facts which, if established, would prove that the trial was a mere sham and pretense, offensive to the concept of due process. There also, state law required the appointment of counsel for one on trial for the offense involved.

Those cases, which are the petitioner's chief reliance, do not rule this. The question we are now to decide is whether due process of law demands that in every criminal case, whatever the circumstances, a State must furnish counsel to an indigent defendant. Is the furnishing of counsel in all cases whatever dictated by natural, inherent, and fundamental principles of fairness? The answer to the question may be found in the common understanding of those who have lived under the Anglo-American system of law. By the Sixth Amendment the people ordained that, in all criminal prosecutions, the accused should "enjoy the right . . . to have the assistance of counsel for his defence." We have construed the provision to require appointment of counsel in all cases where a defendant is unable to procure the services of an attorney, and where the right has not been intentionally and

competently waived.[14]  Though, as we have noted, the
Amendment lays down no rule for the conduct of the
States, the question recurs whether the constraint laid by
the Amendment upon the national courts expresses a rule
so fundamental and essential to a fair trial, and so, to due
process of law, that it is made obligatory upon the States
by the Fourteenth Amendment.  Relevant data on the
subject are afforded by constitutional and statutory pro-
visions subsisting in the colonies and the States prior to
the inclusion of the Bill of Rights in the national Consti-
tution, and in the constitutional, legislative, and judicial
history of the States to the present date.  These constitute
the most authoritative sources for ascertaining the con-
sidered judgment of the citizens of the States upon the
question.

The Constitutions of the thirteen original States, as they
were at the time of federal union, exhibit great diversity in
respect of the right to have counsel in criminal cases.
Rhode Island had no constitutional provision on the sub-
ject until 1843, North Carolina and South Carolina had
none until 1868.  Virginia has never had any.  Maryland,
in 1776, and New York, in 1777, adopted provisions to the
effect that a defendant accused of crime should be "al-
lowed" counsel.  A constitutional mandate that the ac-
cused should have a right to be heard by himself and by
his counsel was adopted by Pennsylvania in 1776, New
Hampshire in 1774, by Delaware in 1782, and by Con-
necticut in 1818.  In 1780 Massachusetts ordained that
the defendant should have the right to be heard by him-
self or his counsel at his election.  In 1798 Georgia pro-
vided that the accused might be heard by himself or coun-
sel, or both.  In 1776 New Jersey guaranteed the accused
the same privileges of witnesses and counsel as their prose-
cutors "are or shall be entitled to."

---

[14] *Johnson* v. *Zerbst*, 304 U. S. 458.

The substance of these provisions of colonial and early state constitutions is explained by the contemporary common law. Originally, in England, a prisoner was not permitted to be heard by counsel upon the general issue of not guilty on any indictment for treason or felony.[15] The practice of English judges, however, was to permit counsel to advise with a defendant as to the conduct of his case and to represent him in collateral matters and as respects questions of law arising upon the trial.[16] In 1695 the rule was relaxed by statute[17] to the extent of permitting one accused of treason the privilege of being heard by counsel. The rule forbidding the participation of counsel stood, however, as to indictments for felony, until 1836, when a statute accorded the right to defend by counsel against summary convictions and charges of felony.[18] In misdemeanor cases and, after 1695, in prosecutions for treason, the rule was that the defense must be conducted either by the defendant in person or by counsel, but that both might not participate in the trial.[19]

In the light of this common law practice, it is evident that the constitutional provisions to the effect that a defendant should be "allowed" counsel or should have a right "to be heard by himself and his counsel," or that he might be heard by "either or both," at his election, were intended to do away with the rules which denied representation, in whole or in part, by counsel in criminal prosecutions, but were not aimed to compel the State to provide counsel for a defendant. At the least, such a construction by State courts and legislators can not be said to lack reasonable basis.

---

[15] Chitty Criminal Law (5th Am. Ed.) Vol. 1, p. 406.

[16] Chitty, *supra*, Vol. I, p. 407; *Rex* v. *Parkins*, 1 C. & P. 314.

[17] 7 Will. 3, c. 3, § 1.

[18] 6 & 7 Will. 4, c. 114, §§ I and II.

[19] *Rex* v. *White*, 3 Camp. N. P. 97; *Regina* v. *Boucher*, 8 C. & P. 655.

The statutes in force in the thirteen original States at the time of the adoption of the Bill of Rights are also illuminating. It is of interest that the matter of appointment of counsel for defendants, if dealt with at all, was dealt with by statute rather than by constitutional provision. The contemporary legislation exhibits great diversity of policy.[20]

The constitutions of all the States, presently in force, save that of Virginia, contain provisions with respect to the assistance of counsel in criminal trials. Those of nine

---

[20] Connecticut had no statute, although it was the custom of the courts to assign counsel in all criminal cases. Swift, "System of Laws, Connecticut," 1796, Vol. II, p. 392. In Delaware Penn's Laws of 1719, c. XXII, and in Pennsylvania the Act of May 31, 1718, § III (Mitchell and Flanders' Statutes at Large of Penna., 1682–1801, Vol. III, p. 201) provided for appointment only in case of "felonies of death." Georgia has never had any law on the subject. Maryland had no such law at the time of the adoption of the Bill of Rights. An Act of 1777 in Massachusetts gave the right to have counsel appointed in cases of treason or misprision of treason. Laws of the Commonwealth of Massachusetts from Nov. 28, 1780 to Feb. 28, 1807, c. LXXI, Vol. II, Appendix, p. 1049. By an Act of Feb. 8, 1791, New Hampshire required appointment in all cases where the punishment was death. Metcalf's Laws of New Hampshire, 1916, Vol. 5, pp. 596, 599. An Act of New Jersey of March 6, 1795, § 2, required appointment in the case of any person tried upon an indictment. Acts of the General Assembly of the Session of 1794, c. DXXXII, p. 1012. New York apparently had no statute on the subject. See Act. Feb. 20, 1787, Laws of New York, Sessions 1st to 20th (1798), Vol. I, pp. 356–7. An Act of 1777 of North Carolina made no provision for appointment, but accorded defendants the right to have counsel. Laws of North Carolina, 1789, pp. 40, 56. Rhode Island had no statute until 1798, when one was passed in the words of the Sixth Amendment. Laws 1798, p. 80. South Carolina, by Act of August 20, 1731, limited appointment to capital cases. Grimke's So. Car. Pub. Laws, 1682–1790, p. 130. Virginia, by Act of Oct. 1786, enacted with respect to one charged with treason or felony that "the court shall allow him counsel . . . if he desire it." Hening's Statutes of Virginia, 1785–1788, Vol. 12, p. 343.

States [21] may be said to embody a guarantee textually the same as that of the Sixth Amendment, or of like import. In the fundamental law of most States, however, the language used indicates only that a defendant is not to be denied the privilege of representation by counsel of his choice.[22]

In three States, the guarantee, whether or not in the exact phraseology of the Sixth Amendment, has been held to require appointment in all cases where the defendant

---

[21] *Georgia* (Art. I, Par. V); *Iowa* (Art. I, § 10); *Louisiana* (Art. I, § 9); *Michigan* (Dec. of Rights, Art. II, § 19); *Minnesota* (Art. I, § 6); *New Jersey* (Art. I, § 8); *North Carolina* (Art. I, § 11); *Rhode Island* (Art. I, § 10); *West Virginia* (Art. III, § 14).

[22] Some assert the right of a defendant "to appear and defend in person and by counsel." *Arizona* (Art. II, § 24); *Colorado* (Art. II, § 16); *Illinois* (Art. II, § 9); *Missouri* (Art. II, § 22); *Montana* (Art. III, § 16); *New Mexico* (Art. II, § 14); *South Dakota* (Art. VI, § 7); *Utah* (Art. I, § 12); *Wyoming* (Art. I, § 10). Others phrase the right as that "to be heard by himself and [his] counsel": *Arkansas* (Art. II, § 10); *Delaware* (Art. I, § 7); *Indiana* (Art. I, § 13); *Kentucky* (Bill of Rights, § 11); *Pennsylvania* (Art. I, § 9); *Tennessee* (Art. I, § 9); *Vermont* (Ch. I, Art. 10th); or "by himself and by counsel": *Connecticut* (Art. I, § 9); or "by himself and counsel": *New Hampshire* (Bill of Rights, 15th); *Oklahoma* (Art. II, § 20); *Oregon* (Art. I, § 11); *Wisconsin* (Art. I, § 7); or "by himself and counsel or either": *Alabama* (Art. I, § 6); "by himself or counsel or [by] both": *Florida* (Dec. of Rights, § 11); *Mississippi* (Art. III, § 26); *South Carolina* (Art. I, § 18); *Texas* (Art. I, § 10). The verbiage sometimes employed is: "to appear and defend in person and with counsel": *California* (Art. I, § 13), *Idaho*, (Art. I, § 13); *North Dakota* (Art. I, § 13); *Ohio* (Art. I, § 10); or "in person or by counsel"; *Kansas* (Bill of Rights, § 10); *Nebraska* (Art. I, § 11); *Washington* (Art. I, § 22). *Nevada* (Art. I, § 8) and *New York* (Art. I, § 6) add: "as in civil actions." Some constitutions formulate the right as one "to be heard by himself and his counsel at his election" or "himself and his counsel or either at his election": *Massachusetts* (Part I, § 12), *Maine* (Art. I, § 6). *Maryland* (Dec. of Rights, Art. 21) states the right as that "to be allowed counsel."

is unable to procure counsel.[23] In six, the provisions (one of which is like the Sixth Amendment) have been held not to require the appointment of counsel for indigent defendants.[24] In eight, provisions, one of which is the same as that of the Sixth Amendment, have evidently not been viewed as requiring such appointment, since the courts have enforced statutes making appointment discretionary, or obligatory only in prosecutions for capital offenses or felonies.[25]

In twelve States, it seems to be understood that the constitutional provision does not require appointment of

---

[23] *Elam* v. *Johnson*, 48 Ga. 348; *Delk* v. *State*, 99 Ga. 667, 26 S. E. 752; *Fugate* v. *Commonwealth*, 254 Ky. 663, 72 S. W. 2d 47; *Carpenter* v. *Dane County*, 9 Wis. 274.

[24] *Cutts* v. *State*, 54 Fla. 21, 45 So. 491; *McDonald* v. *Commonwealth*, 173 Mass. 322, 53 N. E. 874; *People* v. *Dudley*, 173 Mich. 389, 138 N. W. 1044; *People* v. *Williams*, 225 Mich. 133, 195 N. W. 818; *People* v. *Harris*, 266 Mich. 317, 253 N. W. 312; *People* v. *Crandell*, 270 Mich. 124, 258 N. W. 224; *Commonwealth* v. *Smith*, 344 Pa. 41, 24 A. 2d 1; *State* v. *Sweeney*, 48 S. D. 248, 203 N. W. 460; *State* v. *Yoes*, 67 W. Va. 546, 68 S. E. 181; cf. *Pardee* v. *Salt Lake County*, 39 Utah 482, 118 P. 122.

[25] *Alabama:* Code (1940) Tit. 15, § 318; *Campbell* v. *State*, 182 Ala. 18, 62 So. 57; *Gilchrist* v. *State*, 234 Ala. 73, 173 So. 651; *Clark* v. *State*, 239 Ala. 380, 195 So. 260. *Louisiana:* Code Crim. Proc. (Dart, 1932) Tit. XIII, Art. 143; *State* v. *Davis*, 171 La. 449, 131 So. 295. *Maryland:* Annotated Code (Flack, 1939), Art. 26, Par. 7, p. 1060; cf. the decision below and *Coates* v. *Maryland*, 180 Md. 502, 25 A. 2d 676. *Mississippi:* Annotated Code (1930) Crim. Proc., c. 21, § 1262; Laws 1934, c. 303; *Reed* v. *State*, 143 Miss. 686, 109 So. 715; *Robinson* v. *State*, 178 Miss. 568, 173 So. 451. *Rhode Island:* General Laws 1938, c. 625, § 62; Acts & Resolves, 1891, c. 921, p. 165; *State* v. *Hudson*, 55 R. I. 141, 179 A. 130. *South Carolina:* Code 1932, Vol. 1, § 979; *State* v. *Jones*, 172 S. C. 129, 173 S. E. 77. *Texas: Lopez* v. *State*, 46 Tex. Cr. 473, 80 S. W. 1016; *Faggett* v. *State*, 122 Tex. Cr. 399, 55 S. W. 2d 842; *Thomas* v. *State*, 132 Tex. Cr. 549, 106 S. W. 2d 289; *Austin* v. *State*, 51 S. W. 249. *Vermont:* Public Laws (1933) c. 57, § 1424; c. 101, § 2327; c. 102, § 2370; *State* v. *Gomez*, 89 Vt. 490, 96 A. 190.

counsel, since statutes of greater or less antiquity call for such appointment only in capital cases or cases of felony or other grave crime,[26] or refer the matter to the discretion of the court.[27] In eighteen States the statutes now require the court to appoint in all cases where defendants are unable to procure counsel.[28] But this has not always been

[26] *Arkansas:* Steel & McCampbell's Compiled Laws of Arkansas Territory, 1835, "Crimes and Misdemeanors," § 37, p. 194; Gantt's Digest of Ark. Stats. 1874, Crim. Proc. c. 43, Art. XII, § 1824, p. 410; Pope's Digest (1937), Vol. 1, c. 43, § 3877, p. 1180. *Delaware:* Penn's Laws, c. XXII (1719); Rev. Code (1935) c. 114, 4305–6. *Kansas:* Gen. Stats. 1868, c. 82, § 160, p. 845; Gen. Stats. 1935, c. 62, § 1304, p. 1449. *Maine:* Act of March 8, 1826, § 6, p. 146; R. S. Apr. 17, 1857, c. 134, § 12, p. 713; R. S. 1930, c. 146, § 14, p. 1655. *Minnesota:* Act of March 5, 1869, G. L. 1869, c. LXXII, § 1; Mason's Minn. Stats. (1927) Vol. 2, c. 94, § 9957. *Missouri:* Casselberry's Rev. Stats. 1845, pp. 434, 443–4, 458; Rev. Stats. (1939) Crim. Proc. § 4003. *Nebraska:* Gen. Stats. 1873, c. 58, § 437, p. 821; Comp. Stat. (1929) Crim. Proc. Art. 18, § 29–1803. *New Hampshire:* R. S. 1843, Tit. XXVII, c. 225, p. 457; Pub. Laws (1926), c. 368, Laws 1937, c. 22. *Washington:* Territorial Stats. 1881, c. LXXXV, § 1063; Rem. Rev. Stats. Vol. 4, c. 2, § 2305.

[27] *Arizona:* Code (1939) Art. 9, §§ 44–904, 44–905. *Colorado:* Colo. Stats. Annotated (1935), Vol. 2, c. 48, § 502, p. 1148. *Maryland:* Laws 1886, c. 46, p. 66; Anno. Code (Flack, 1939), Art. 26, par. 7.

[28] *California,* Penal Code, Deering (1937), Pt. 2, Tit. 6, c. 1, § 987; *Idaho,* Code Anno. (1932) § 19–1412; *Illinois,* R. S. 1935, c. 38, ¶ 754; *Iowa,* Code 1939, c. 640, § 13773; *Kansas,* Laws 1941, c. 291; *Michigan,* Statutes Ann. § 28.1253; *Montana,* Rev. Codes Ann. (1935) c. 73, § 11886; *Nevada,* Comp. Laws (1929) Cr. L. & Proc. § 10883; *New Jersey,* N. J. Stat. Ann. § 2: 190–3; *New York,* Thompson's Laws (1939) Pt. II, Code of Crim. Proc. § 308; *North Dakota,* Comp. Laws (1913) Vol. II, § 8965; *Ohio,* Throckmorton's Code Ann. (1940) § 13439–2; *Oklahoma,* Stats. Ann. Tit. 22, § 1271; *Oregon,* Comp. Laws Ann. Vol. 3, § 26–804; *South Dakota,* Code (1939) § 34.1901; *Tennessee,* Michie's Code (1938) § 11734; *Utah,* R. S. (1938) Code Cr. Proc. § 105–22–12; *Wyoming,* R. S. (1931) § 33–501. Connecticut provides official public defenders available to all persons unable to retain counsel. G. S. (Revision of 1930), c. 335, § 6476.

At least as early as 1903 (3 Edw. 7, c. 38) England adopted a Poor Prisoners' Defence Act, under which a rule was adopted whereby an

the statutory requirement in some of those States.[29]  And it seems to have been assumed by many legislatures that the matter was one for regulation from time to time as deemed necessary, since laws requiring appointment in all cases have been modified to require it only in the case of certain offenses.[30]

This material demonstrates that, in the great majority of the States, it has been the considered judgment of the people, their representatives and their courts that appointment of counsel is not a fundamental right, essential to a fair trial.  On the contrary, the matter has generally been deemed one of legislative policy.  In the light of this evidence, we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the States, whatever may be their own views, to furnish counsel in every such case.  Every court has power, if it deems

---

accused might defend by counsel assigned by the court.  Bowen-Rowlands, Criminal Proceedings, London (1904) pp. 46–47.  The existing statute is the Poor Prisoners' Defence Act (1930) 20 & 21 Geo. 5, c. 32.  See Archbold's Criminal Pleading, Evidence and Practice, 30th Ed. (1938) p. 167.  Under this act a poor defendant is entitled as of right to counsel on a charge of murder, but assignment of counsel is discretionary in other cases.

[29] See e. g. earlier and more restricted statutes:  *Idaho,* Terr. Laws, 2d Sess., 1864, c. II, p. 246; *Iowa,* Act of January 4, 1839, § 64; *Korf* v. *Jasper County,* 132 Ia. 682, 108 N. W. 1031; *Michigan,* Laws 1857, Act No. 109, p. 239; *Montana,* Act January 12, 1872, c. IX, § 196; *Nevada,* Comp. L. 1861–73, c. LIII.  Changes in the statutes of other States might be cited.  Compare Notes 20 and 28.

[30] *Louisiana.*  Compare Laws, 1855, Act No. 121; *State* v. *Ferris,* 16 La. Ann. 424; *State* v. *Bridges,* 109 La. 530, 33 So. 589, with La. Code Crim. Proc. (Dart) 1932, Tit. XIII, Art. 143.  *Nebraska.*  Compare Laws of 1869, p. 163, with Comp. Stats. (1929) § 29-1803.  *Washington.*  Compare Code of Washington Terr. (1881) c. LXXXV, § 1063 with Rem. Rev. Stats. Vol. 4, c. 2, § 2305.  And compare Texas Code Crim. Proc. (1856), Pt. III, Arts. 466-7 with Vernon's Stats. (1936), Art. 1917, and *Lopez* v. *State,* 46 Tex. Cr. 473, 80 S. W. 1016, and *Thomas* v. *State,* 132 Tex. Cr. 549, 106 S. W. 2d 289.

proper, to appoint counsel where that course seems to be required in the interest of fairness.

The practice of the courts of Maryland gives point to the principle that the States should not be straight-jacketed in this respect, by a construction of the Fourteenth Amendment. Judge Bond's opinion states, and counsel at the bar confirmed the fact, that in Maryland the usual practice is for the defendant to waive a trial by jury. This the petitioner did in the present case. Such trials, as Judge Bond remarks, are much more informal than jury trials and it is obvious that the judge can much better control the course of the trial and is in a better position to see impartial justice done than when the formalities of a jury trial are involved.[31]

In this case there was no question of the commission of a robbery. The State's case consisted of evidence identifying the petitioner as the perpetrator. The defense was an alibi. Petitioner called and examined witnesses to prove that he was at another place at the time of the commission of the offense. The simple issue was the veracity of the testimony for the State and that for the defendant. As Judge Bond says, the accused was not helpless, but was a man forty-three years old, of ordinary intelligence, and ability to take care of his own interests on the trial of that narrow issue. He had once before been in a criminal court, pleaded guilty to larceny and served a sentence and was not wholly unfamiliar with criminal procedure. It is quite clear that in Maryland, if the situation had been otherwise and it had appeared that the petitioner was, for any reason, at a serious disadvantage by reason of the lack

---

[31] Judge Bond adds: "Certainly my own experience in criminal trials over which I have presided (over 2000, as I estimate it), has demonstrated to me that there are fair trials without counsel employed for the prisoners."

of counsel, a refusal to appoint would have resulted in the reversal of a judgment of conviction. Only recently the Court of Appeals has reversed a conviction because it was convinced on the whole record that an accused, tried without counsel, had been handicapped by the lack of representation.[32]

To deduce from the due process clause a rule binding upon the States in this matter would be to impose upon them, as Judge Bond points out, a requirement without distinction between criminal charges of different magnitude or in respect of courts of varying jurisdiction. As he says: "Charges of small crimes tried before justices of the peace and capital charges tried in the higher courts would equally require the appointment of counsel. Presumably it would be argued that trials in the Traffic Court would require it." And, indeed, it was said by petitioner's counsel both below and in this court, that as the Fourteenth Amendment extends the protection of due process to property as well as to life and liberty, if we hold with the petitioner, logic would require the furnishing of counsel in civil cases involving property.

As we have said, the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right, and while want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the Amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel.

The judgment is

*Affirmed.*
[Over]

---

[32] *Coates* v. *State,* 180 Md. 502, 25 A. 2d 676.

MR. JUSTICE BLACK, dissenting, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY concur.

To hold that the petitioner had a constitutional right to counsel in this case does not require us to say that "no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel." This case can be determined by a resolution of a narrower question: whether in view of the nature of the offense and the circumstances of his trial and conviction, this petitioner was denied the procedural protection which is his right under the Federal Constitution. I think he was.

The petitioner, a farm hand, out of a job and on relief, was indicted in a Maryland state court on a charge of robbery. He was too poor to hire a lawyer. He so informed the court and requested that counsel be appointed to defend him. His request was denied. Put to trial without a lawyer, he conducted his own defense, was found guilty, and was sentenced to eight years' imprisonment. The court below found that the petitioner had "at least an ordinary amount of intelligence." It is clear from his examination of witnesses that he was a man of little education.

If this case had come to us from a federal court, it is clear we should have to reverse it, because the Sixth Amendment makes the right to counsel in criminal cases inviolable by the Federal Government. I believe that the Fourteenth Amendment made the Sixth applicable to the states.[1] But this view, although often urged in dissents, has never been accepted by a majority of this Court

[1] Discussion of the Fourteenth Amendment by its sponsors in the Senate and House shows their purpose to make secure against invasion by the states the fundamental liberties and safeguards set out in the Bill of Rights. The legislative history and subsequent course of the amendment to its final adoption have been discussed in Flack, "The Adoption of the Fourteenth Amendment." Flack cites the Congres-

and is not accepted today. A statement of the grounds supporting it is, therefore, unnecessary at this time. I believe, however, that, under the prevailing view of due process, as reflected in the opinion just announced, a view which gives this Court such vast supervisory powers that I am not prepared to accept it without grave doubts, the judgment below should be reversed.

This Court has just declared that due process of law is denied if a trial is conducted in such manner that it is "shocking to the universal sense of justice" or "offensive to the common and fundamental ideas of fairness and right." On another occasion, this Court has recognized that whatever is "implicit in the concept of ordered liberty" and "essential to the substance of a hearing" is within the procedural protection afforded by the constitutional guaranty of due process. *Palko* v. *Connecticut*, 302 U. S. 319, 325, 327.

The right to counsel in a criminal proceeding is "fundamental." *Powell* v. *Alabama*, 287 U. S. 45, 70; *Grosjean* v. *American Press Co.*, 297 U. S. 233, 243–244. It is guarded from invasion by the Sixth Amendment, adopted to raise an effective barrier against arbitrary or unjust deprivation of liberty by the Federal Government. *Johnson* v. *Zerbst*, 304 U. S. 458, 462.

An historical evaluation of the right to a full hearing in criminal cases, and the dangers of denying it, were set out in the *Powell* case, where this Court said: "What . . . does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the person asserting the right . . . Even the in-

---

sional debates, committee reports, and other data on the subject. Whether the amendment accomplished the purpose its sponsors intended has been considered by this Court in the following decisions, among others: *O'Neil* v. *Vermont*, 144 U. S. 323, dissent, 337; *Maxwell* v. *Dow*, 176 U. S. 581, dissent, 605; *Twining* v. *New Jersey*, 211 U. S. 78, 98–99, dissent, 114.

telligent and educated layman . . . lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel in every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Powell* v. *Alabama, supra,* 68–69. Cf. *Johnson* v. *Zerbst, supra,* 462–463.

A practice cannot be reconciled with "common and fundamental ideas of fairness and right," which subjects innocent men to increased dangers of conviction merely because of their poverty. Whether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendant's case was adequately presented. No one questions that due process requires a hearing before conviction and sentence for the serious crime of robbery. As the Supreme Court of Wisconsin said, in 1859, " . . . would it not be a little like mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial of the matters with which he was charged, and yet say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real permanent value to him. . . . Why this great solicitude to secure him a fair trial if he cannot have the benefit of counsel?" *Carpenter* v. *Dane County,* 9 Wis. 274, 276–277.

Denial to the poor of the request for counsel in proceedings based on charges of serious crime has long been regarded as shocking to the "universal sense of justice" throughout this country. In 1854, for example, the Supreme Court of Indiana said: "It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred of counsel because he was too poor to employ such aid. No Court could be respected, or respect itself, to sit and hear

such a trial. The defence of the poor, in such cases, is a duty resting somewhere, which will be at once conceded as essential to the accused, to the Court, and to the public." *Webb* v. *Baird*, 6 Ind. 13, 18. And most of the other States have shown their agreement by constitutional provisions, statutes, or established practice judicially approved, which assure that no man shall be deprived of counsel merely because of his poverty.[2] Any other practice seems to me to defeat the promise of our democratic society to provide equal justice under the law.

## APPENDIX

I. States which require that indigent defendants in non-capital as well as capital criminal cases be provided with counsel on request:

A. *By Statute.* ARIZONA: Revised Statutes of Arizona Territory, 1901, Penal Code, Pt. II, Title VII, § 858; Arizona Code Ann. 1939, Vol. III, § 44–904. ARKANSAS: Compiled Laws, Arkansas Territory, 1835, Crimes and Misdemeanors, § 37; Pope's Digest, 1937, Vol. I, c. 43, § 3877. CALIFORNIA: California Penal Code of 1872, § 987; Deering's Penal Code, 1937, § 987. IDAHO: Territorial Criminal Practice Act, 1864, § 267; Idaho Code, 1932, §§ 19–1412, 19–1413. ILLINOIS: Rev. Stat. 1874, Criminal Code, § 422; Jones's Ill. Stat. Ann. 1936, § 37.707.

---

[2] In thirty-five states, there is some clear legal requirement or an established practice that indigent defendants in serious non-capital as well as capital criminal cases (*e.g.*, where the crime charged is a felony, a "penitentiary offense," an offense punishable by imprisonment for several years) be provided with counsel on request. In nine states, there are no clearly controlling statutory or constitutional provisions and no decisive reported cases on the subject. In two states, there are dicta in judicial decisions indicating a probability that the holding of the court below in this case would be followed under similar circumstances. In only two states (including the one in which this case arose) has the practice here upheld by this Court been affirmatively sustained. Appended to this opinion is a list of the several states divided into these four categories.

*Cf.* Laws, 1933, 430–431. See also, *Vise* v. *County of Hamilton,* 19 Ill. 78, 79 (1857). IOWA: Territorial Laws, 1839, Courts, § 64; Iowa Code, 1939, § 13773. KANSAS: See Compilation published in 1856 as S. Doc. No. 23, 34th Cong., 1st Sess., 520 (c. 129, Art. V, § 4). Laws, 1941, c. 291. LOUISIANA: Act of May 4, 1805, of the Territory of Orleans, § 35; Dart's Louisiana Code of Criminal Procedure, 1932, Title XIII, Art. 143. MINNESOTA: Minnesota General Laws, 1869, c. LXXII, § 1; Mason's Minnesota Statutes, 1927, §§ 9957, 10667. MISSOURI: Digest of Laws of Missouri Territory, 1818, Crimes and Misdemeanours, § 35; Rev. Stat. 1939, § 4003. MONTANA: Montana Territory Criminal Practice Act of 1872, § 196 (Laws of Montana, Codified Stat. 1871–1872, 220); Revised Code, 1935, § 11886. NEBRASKA: General Statutes, 1873, c. 58, § 437; Compiled Stat. 1929, § 29–1803. NEVADA: Act of November 26, 1861 (Compiled Laws, 1861–1873, Vol. I, 477, 493); Compiled Laws, 1929, Vol. 5, § 10883. NEW HAMPSHIRE: Laws, 1907, c. 136; Laws, 1937, c. 22. NEW JERSEY: Act of March 6, 1795, § 2; New Jersey Stat. § 2.190–3. NEW YORK: Code of Criminal Procedure, § 308 (enacted in 1881, still in force). See *People* v. *Supervisors of Albany County,* 28 How. Pr. 22, 24 (1864). NORTH DAKOTA: Dakota Territory Code of Procedure, 1863, § 249 (Rev. Codes, 1877, Criminal Procedure, 875); Compiled Laws, 1913, Vol. II, §§ 8965, 10721. OHIO: Act of February 26, 1816, § 14 (Chase, Statutes of Ohio, 1788–1833, Vol. II, 982); Throckmorton's Ohio Code Ann. 1940, Vol. II, § 13439–2. OKLAHOMA: Oklahoma Territorial Stat. 1890, c. 70, § 10; Stat. Ann. 1941 Supp., Title 22, § 464. OREGON: Act of October 19, 1864 (General Laws, 1845–1864, c. 37, § 381; Laws 1937, c. 406 (Compiled Laws Ann., Vol. III, § 26–804). SOUTH DAKOTA: Dakota Territory Code of Procedure, 1863, § 249 (Rev. Codes, 1877, Criminal Procedure 875); Code of 1939, Vol. II, § 34.1901. TENNESSEE: Code of 1857–1858, §§ 5205, 5206; Code of 1938,

§§ 11733, 11734. UTAH: Laws of Territory of Utah, 1878, Criminal Procedure, § 181; Rev. Stat. 1933, § 105–22–12. WASHINGTON: Statutes of Territory of Washington, 1854, Criminal Practice Act, § 89; Remington's Revised Statutes, 1932, Vol. IV, §§ 2095, 2305. WYOMING: Laws of Wyoming Territory, 1869, Criminal Procedure, § 98; Rev. Stat. 1931, § 33–501.

B. *By judicial decision or established practice judicially approved.* CONNECTICUT: For an account of early practice in Connecticut, see Zephaniah Swift "A System of the Laws of the State of Connecticut," Vol. II, 392: "The chief justice then, before the prisoner is called upon to plead, asks the prisoner if he desires counsel, which if requested, is always granted, as a matter of course. On his naming counsel, the court will appoint or assign them. If from any cause, the prisoner decline to request or name counsel, and a trial is had, especially in the case of minors, the court will assign proper counsel. When counsel are assigned, the court will enquire of them, whether they have advised with the prisoner, so that he is ready to plead, and if not, will allow them proper time for that purpose. But it is usually the case that the prisoner has previously employed and consulted counsel, and of course is prepared to plead." See *Powell* v. *Alabama,* 287 U. S. 45, footnote, 63–64. See also, Connecticut General Statutes, Revision of 1930, §§ 2267, 6476. FLORIDA: *Cutts* v. *State,* 54 Fla. 21, 23, 45 So. 491 (1907). See Compiled General Laws, 1927, § 8375 (capital crimes). INDIANA: *Webb* v. *Baird,* 6 Ind. 13, 18 (1854). See also *Knox County Council* v. *State ex rel. McCormick,* 217 Ind. 493, 497–498, 29 N. E. 2d 405 (1940); *State* v. *Hilgemann,* 218 Ind. 572, 34 N. E. 2d 129, 131 (1941). MICHIGAN: *People* v. *Crandell,* 270 Mich. 124, 127, 258 N. W. 224 (1935). PENNSYLVANIA: *Commonwealth* v. *Richards,* 111 Pa. Super. 124, 169 A. 464 (1933). See *Commonwealth ex rel. McGlinn* v. *Smith,* 344 Pa. 41, 49, 59, 24 A. 2d 1. VIRGINIA: *Watkins* v. *Commonwealth,* 174 Va. 518, 521–525, 6 S. E. 2d 670 (1940).

WEST VIRGINIA: *State* v. *Kellison,* 56 W. Va. 690, 692–693, 47 S. E. 166 (1904). WISCONSIN: *Carpenter* v. *Dane County,* 9 Wis. 274 (1859). See Stat. 1941, § 357.26.

C. *By constitutional provision.* GEORGIA: Constitution of 1865, Art. 1, Par. 8. See *Martin* v. *Georgia,* 51 Ga. 567, 568 (1874). KENTUCKY: Kentucky Constitution, § 11. See *Fugate* v. *Commonwealth,* 254 Ky. 663, 665, 72 S. W. 2d 47 (1934).

II. States which are without constitutional provision, statutes, or judicial decisions clearly establishing this requirement:

COLORADO: General Laws, 1877, §§ 913–916; Colorado Stat. Ann. 1935, Vol. 2, c. 48, §§ 502, 505, as amended by Laws of 1937, 498, § 1. See *Abshier* v. *People,* 87 Colo. 507, 517, 289 P. 1081. DELAWARE: See 6 Laws of Delaware 741; 7 *id.* 410; Rev. Code, 1935, §§ 4306, 4310. MAINE: See Rev. Stat. 1857, 713; Rev. Stat. 1930, c. 146, § 14. MASSACHUSETTS: See *McDonald* v. *Commonwealth,* 173 Mass. 322, 327, 53 N. E. 874 (1899). NEW MEXICO. NORTH CAROLINA. RHODE ISLAND: See *State* v. *Hudson,* 55 R. I. 141, 179 A. 130 (1935); General Laws, 1938, c. 625, § 62. SOUTH CAROLINA: See *State* v. *Jones,* 172 S. C. 129, 130, 173 S. E. 77 (1934); Code, 1932, Vol. I, § 980. VERMONT.

III. States in which dicta of judicial opinions are in harmony with the decision by the court below in this case:

ALABAMA: *Gilchrist* v. *State,* 234 Ala. 73, 74, 173 So. 651. MISSISSIPPI: *Reed* v. *State,* 143 Miss. 686, 689, 109 So. 715.

IV. States in which the requirement of counsel for indigent defendants in non-capital cases has been affirmatively rejected:

MARYLAND: See, however, *Coates* v. *State,* 180 Md. 502, 25 A. 2d 676. TEXAS: *Gilley* v. *State,* 114 Tex. Cr. 548, 26 S. W. 2d 1070. But *cf. Brady* v. *State,* 122 Tex. Cr. 275, 278, 54 S. W. 2d 513.