PEOPLE v. SUMERACKI.

1. CRIMINAL LAW—APPOINTMENT OF DEFENSE COUNSEL—FAIR TRIAL.
Defendant, one of 22 tried on charge of conspiracy to corrupt the
State legislature by bribery, who was not present during the
first 3 of the 6 days the trial court was engaged in impaneling
a jury, was afforded opportunity by the court to participate
in drawing the jury and in challenging jurors, did not ask
for counsel and voluntarily sat without counsel during the
ensuing 2 months of the trial, was not so prejudiced in his
rights that he was, on that account, denied a fair trial.

2. SAME—PARTICIPATION IN CONSPIRACY TRIAL WITHOUT COUNSEL—
DUE PROCESS.
In trial of 22 persons on charge of conspiracy to corrupt the
State legislature by bribery, where defendant who had been a
legislator for 2 terms was not shown to have been unable to em-
ploy counsel, to have requested counsel nor been refused counsel,
and it appears he made replies to the court in response to
opportunities afforded him by the court to participate in the
trial *in propria persona,* obviously allowed the court to con-
clude he was satisfied to participate without counsel in trial
lasting 2 months and whose rights were adequately protected
by counsel for other defendants in like circumstances with him
and in the same case, was not denied due process by reason
of lack of counsel.

Appeal from Ingham; Simpson (John) J., presid-
ing. Submitted May 19, 1949. (Docket No. 68, Cal-
endar No. 42,922.) Decided January 12, 1950. Re-
hearing granted February 28, 1950. See 328 Mich
164.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 14 Am Jur, Criminal Law, § 167; 53 Am Jur, Trial, § 25.
[1, 2] Accused's constitutional right to assistance of counsel.  84
US L ed 383.

Adam W. Sumeracki and others were convicted of a conspiracy to corrupt the legislature of the State of Michigan by bribery. Affirmed.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, and *Richard B. Foster,* Special Assistant Prosecuting Attorney, for the people.

*Frank G. Schemanske,* for appellant Sumeracki.

Reid, J. (*dissenting*). Defendant, with several others, was informed against, tried, convicted and sentenced for conspiracy to corrupt the 1939 Michigan State legislature and members thereof by the giving and taking of bribes. In general the most important facts concerning the trial are set forth in *People* v. *Hancock, ante,* 471, *People* v. *Omacht, ante,* 505, *People* v. *Cooper, ante,* 514, and cases of other codefendants decided by this Court on January 9, 1950. Many of the errors relied on by defendant Sumeracki were ruled upon by this Court in those cases, and it is unnecessary again to repeat them.

There are certain matters peculiar to Sumeracki's case, however, to which matters we will refer. When the case was taken up for trial and impaneling of the jury begun, on June 12, 1944, defendant Sumeracki was in the service of the United States army, and was not present at the beginning of the trial. The court noted his absence on that day and the next day. On June 15th, defendant Sumeracki appeared in court and answered the roll call and on that day, when various defendants were being asked as to their challenges to jurors, the record shows the following:

"*The Court:* Mr. Sumeracki?

"*Mr. Sumeracki:* Defendant Sumeracki is satisfied with the jury at the present time."

A similar question was asked and like answer returned on the following day, June 16th.

At the conclusion of the testimony offered by certain defendants the following occurred:

"*Mr. Schemanske:* The defendant Kronk rests, your Honor, please also the defendant Stanley Dombrowski.

"*The Court:* All right.

"*Mr. Sigler* [special assistant prosecuting attorney]: Stanley Dombrowski?

"*Mr. Schemanske:* Those are the only two I represent.

"*Mr. Sigler:* I thought you represented Adam Sumeracki.

"*Mr. Schemanske:* Oh, no, I don't represent Adam Sumeracki.

"*Mr. Sumeracki:* Your Honor, the defendant Sumeracki rests."

Defendant Sumeracki is not an attorney. The court was informed that Sumeracki was not represented by an attorney, but the court did not inform the defendant of his right to be represented by an attorney. Defendant at no time expressly announced that he appeared *in propria persona.* It is not shown that defendant Sumeracki understood the effect of his statements in open court, upon the question of his right to be represented by counsel, nor that he intended to waive any such right. He did not cross-examine any witness, object to any testimony or to any statements of counsel. The court did not inform him of his right to be sworn as a witness, and of his right to argue the case. The defendant Sumeracki was not in fact sworn as a witness.

The trial lasted from June 12, 1944, to August 12th following. There were 22 defendants in all. The trial was lengthy and it was practically impossible for defendant Sumeracki to effectively conduct his own defense.

In view of the whole situation as above recited, we conclude that defendant Sumeracki was not given a fair trial.

The case should be remanded to the trial court with instructions to set aside the verdict and judgment, and grant defendant a new trial.

BUSHNELL, J., concurred with REID, J.

BOYLES, C. J.  I do not concur in reversal on the ground stated by Mr. Justice REID.

It is true that this defendant did not appear in court on June 12th, 13th and 14th, the first 3 days of the trial which were consumed in the impaneling of a jury to hear the case. However, on June 15th, at a time when challenges to the jury were still open, Mr. Sumeracki was present and in response to a question addressed by the court to Mr. Sumeracki he replied:

"Defendant Sumeracki is satisfied with the jury at the present time."

The record shows that during the rest of the time until the jury was finally accepted and sworn on June 17th, Mr. Sumeracki was present and appeared for himself in person, which he unquestionably had the right to do.  The following appears in the record with respect to the challenges to the jury by Mr. Sumeracki:

"June 16, 1944
"*Q.* Mr. Sumeracki?
"*Mr. Sumeracki:* Satisfied, Your Honor.

"June 17, 1944
"*Q.* Mr. Sumeracki?
"*Mr. Sumeracki:* Satisfied.
"June 17, 1944
"*Q.* Mr. Sumeracki?
"*Mr. Sumeracki:* Satisfied."

All of the foregoing occurred while the jury was being impaneled and before the jury was sworn. Mr. Sumeracki was afforded by the court the opportunity to participate in drawing the jury and in challenging jurors. I do not agree that the fact that Sumeracki was absent the first 3 days of the 6 days during which the court was engaged in impaneling the jury prejudiced his rights or should result in a reversal as to him. He did not ask for counsel, and voluntarily sat during the ensuing 2 months of the trial without counsel. Certainly he had the right to do so, and his conviction should not now be set aside on that account.

At the conclusion of proofs offered by the legislative defendants, Mr. Sumeracki, who was a legislative defendant, said:

"Your Honor, the defendant Sumeracki rests."

And the court answered:

"All right, then I take it all of the legislative defendants rest."

During the arguments to the jury by counsel for the defendants, Mr. Schemanske, the attorney who represented one of the other defendants, Kronk, summed up the case for defendant Sumeracki. He stated to the jury:

"There is one defendant here, ladies and gentlemen of the jury, that is not represented by counsel, and I want to take a little time, and just say a few words for him,—and that is Adam Sumeracki. He sits there with the uniform, he has no attorney, but

I think in all fairness, I think something should be said about him; I am not paid by him; I am not paid by Dombrowski either; to appear here. I only appear for Martin Kronk, and that is how I happen to be here.

"I am doing this of my own good will, as an attorney, as an officer of the court, when I speak for these two individuals. And you certainly cannot condemn me for that.

"But I want to say to you, as far as Sumeracki,— he has been sitting there with his private's uniform all during the trial, and the testimony is very short against him you remember, and you must analyze it, if you please. Roosevelt testified that he had paid Sumeracki money in the bathroom. Isn't that true?

"Then you take Hemans' testimony, and Hemans says, 'I have never paid any money to Sumeracki. I have never given any money to Roosevelt for Sumeracki.'

"Now, when you analyze this testimony—

"*Mr. Sigler:* Well, wait a second now. There isn't anything in this record that bears out that last statement.

"*Mr. Schemanske:* Well, I will answer that. Did Roosevelt—did Hemans,—and I will challenge my brother, let him point in the record to you that Hemans testified at any time that he had paid money to Sumeracki, or that he had given money to Roosevelt to pay Sumeracki.

"That is a fair statement, isn't it? He has the last answer. Let him answer that, if you please.

"Now, coming back to the analysis again. It is the prosecution's theory that Sumeracki had joined in this other conspiracy, that the money was given to Stockfish for Sumeracki, but at no time did he contend that Hemans had paid him money in the bathroom.

"If they were so careful,—if Dombrowski and Sumeracki were so careful in asking Stockfish to take money for them, why do you think for one minute that Sumeracki or Dombrowski,—or Sumer-

acki alone,—would take money from Roosevelt?
They certainly don't dovetail, do they?, And that is
the only way you can analyze this testimony is by
taking the testimony as it appears, and drawing the
proper inference from that testimony and that is all
you are asked to do.

"I don't think I should go any more into detail as
to parts of the transcript,—I intended to, there are
certain parts I marked, but I don't think I will read
them to you, ladies and gentlemen, because the hour
is getting late, but I want you to remember some of
the things that I have tried to bring home to you.

"Now, as to Dombrowski and Sumeracki, I have
read the testimony to you, and I want you to weigh
it in your jury room, and the last thought that I
will leave with you is this: You will hear from me
no more in this case, and I am about ready to stop
and sit down.

"As to Sumeracki and Dombrowski, you have
heard the record read, and that was almost the entire
record as given by Major Hemans and Roosevelt,
who took the stand, and I ask you in all fair play,
where in that testimony can you say that those two
individuals have joined into a conspiracy to commit
the offense that is stated in the information in this
case.

"I say to you, it does not, that the prosecution has
not proven a case against these individuals, and I
ask for a verdict of not guilty."

The above appears in the record, stipulated by
the present counsel for Mr. Sumeracki, appellant,
as being the circumstances connected with his claim
for reversal. In addition, it appears that defend-
ant Sumeracki was a man of fairly mature years,
having served 2 terms in the State legislature. Pre-
sumably he was not entirely ignorant regarding the
processes of the law. By his replies to the court in
response to the opportunities afforded him by the
court to participate in the trial *in propria persona*
he obviously allowed the court to conclude that he

was satisfied to participate in the trial without counsel. It would appear that the same participation he might have been afforded by counsel of his own choice was adequately protected by counsel for other defendants in like circumstances with him, and in the same case.* There is no showing that Sumeracki was unable to employ counsel. He did not request counsel, nor did the court refuse to appoint counsel for him. Even if such circumstances did appear, the United States supreme court has recently held:

"Decisions of this court do not lay down a rule that in every case, whatever the circumstances, one charged with crime, who is unable to obtain counsel, must be furnished counsel by the State.

"Upon the facts of this case, the refusal of a State court to appoint counsel to represent an indigent defendant at a trial in which he was convicted of robbery, did not deny him due process of law in violation of the Fourteenth Amendment." *Betts* v. *Brady* (syllabi), 316 US 455 (62 S Ct 1252, 86 L ed 1595).

I am not in accord with Mr. Justice REID's conclusion that:

"In view of the whole situation as above recited, we conclude that defendant Sumeracki was not given a fair trial."

Conviction is affirmed.

NORTH and SHARPE, JJ., concurred with BOYLES, C. J.

DETHMERS, BUTZEL, and CARR, JJ., did not sit.