**Alvin Lee ALLEN**
v.
**H. L. HANCHEY, Warden of Louisiana State Penitentiary at Angola.**
**Misc. No. 787.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Feb. 17, 1965.

Jack Peebles, New Orleans, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Teddy W. Airhart, Jr., Asst. Atty. Gen., Baton Rouge, La., for respondent.

594

WEST, District Judge:

Petitioner is presently serving a twenty year term at Louisiana State Penitentiary after having pleaded guilty on September 12, 1961, to the crime of attempted aggravated rape. After having exhausted his available State Court remedies, he now applies to this Court for a writ of habeas corpus. He contends that his constitutionally guaranteed rights have been violated in that (1) during the four day interval between the time of his arrest and his arraignment he was not permitted to see members of his family, (2) he was induced by force and coercion to sign a confession, (3) he was forced by undue pressure to plead guilty when arraigned, (4) he was never advised of his right to counsel, and (5) he never waived his right to counsel.

In view of the seriousness of petitioner's allegations, this Court held a full evidentiary hearing on January 15, 1965. In addition to petitioner's own testimony, the Court heard the testimony of Fred Jackson, the District Attorney of Claiborne Parish, Louisiana, R. W. Wasson, the Sheriff of Claiborne Parish, Louisiana, G. W. Zachary, Deputy Sheriff of Claiborne Parish, Louisiana, and H. N. Davis, the Sheriff of Bienville Parish, Louisiana.

Petitioner, who was nineteen years of age at the time of his arrest, claims that immediately after his arrest in Homer, Louisiana, which is in Claiborne Parish, he requested to see his parents and was told that his mother did not wish to see him. Almost immediately after his arrest in Homer, Louisiana, he was moved, for security reasons, to Arcadia, Louisiana, which is in Bienville Parish, Louisiana, and which is about twenty miles from Homer. He testified that after arriving at Arcadia he was told that his parents would come to see him. He remained in jail in Arcadia for two or three days, and during that time, his father did, in fact, come to visit him. This visit was prior to his arraignment because he was not arraigned until he was returned to Homer, four days after his arrest. All of the other witnesses

deny that petitioner was ever refused the right to have his parents visit with him, and the evidence is quite clear that one of the arresting deputies did, in fact, talk with petitioner's father, which talk led to the visit of petitioner's father to petitioner while he was in jail in Arcadia.

 Petitioner testified that he was beaten on several occasions by the police officers, and that he signed a confession only because he was beaten and threatened by these officers. This testimony is contradicted by all of the other witnesses. Even though the witnesses were separated from the courtroom during the hearing in this Court, there was no significant variance in their testimony. All of these witnesses denied that petitioner was ever beaten, or that any threats were used in obtaining his confession. It is further significant to note that the petitioner testified that he had never told anyone about this alleged beating until the time he testified before this Court. It seems more than passing strange that had he been beaten as he claims to have been, there was no physical evidence of it, and he mentioned it to no one until the time of his habeas corpus hearing in this Court. All of the other testimony in the case is overwhelming to the effect that petitioner's confession was given freely and voluntarily soon after his arrest. After he was arrested and removed to Arcadia, he was shown a pair of boots that had been found near the scene of the crime. He was requested to try them on. He did so, whereupon he was asked where he got the boots. He readily admitted that they were his, and then, within less than two hours after his initial arrest, he wrote out, in his own handwriting, his confession. After hearing all of the testimony presented at this hearing, the Court is convinced that petitioner's confession was freely and voluntarily given. But at any rate, it must be noted that the confession was not used as evidence against the petitioner because of the fact that he pleaded guilty when arraigned. Petitioner now claims

that he only pleaded guilty because of threats and duress used upon him, but for the same reason that the Court believes his confession to have been voluntarily given, so does it believe that his plea of guilty was voluntarily and knowingly entered.

 Petitioner also contends that he was never advised of his right to counsel, and that no counsel was ever appointed by the Court to represent him. He maintains that he never, in any way, waived his right to counsel. Petitioner was arraigned on September 12, 1961, and the case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, was not decided by the United States Supreme Court until March 18, 1963. Since this Court has consistently held that Gideon is not to be retroactively applied, the question of whether or not the absence of counsel to represent petitioner at the time of his arraignment, conviction, and sentencing must be determined in accordance with the law as it existed on September 12, 1961. At that time, pursuant to LSA–Revised Statutes 15:143, a defendant charged with a felony who was unable to employ counsel could make an affidavit to that effect, whereupon the Court was then required to assign counsel to represent him. But in State v. Neely, 186 La. 171, 171 So. 840, it was held that an indigent defendant could merely request the appointment of counsel, and even though the request was not supported by the statutory affidavit, the Court was obligated to assign counsel to represent such an indigent defendant. Furthermore, under federal law controlling at that time, as enunciated in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1254, 86 L.Ed. 1595, refusal or failure of a State Court to appoint counsel to represent an indigent defendant did not necessarily violate the due process clause of the Fourteenth Amendment to the United States Constitution. Thus, it was under this state of the law that defendant was arraigned, convicted and sentenced. The record in this case clearly reflects that the State Court did all that it was then required to do insofar as protecting petitioner's constitutionally guaranteed rights was concerned. Even though the Court may not have done then what it is required to do now under Gideon, it did, nevertheless, comply completely with the law, both State and Federal, as it existed at that time. Thus, the Court being of the opinion that petitioner's constitutionally guaranteed rights were in no way violated at the time of his arraignment, conviction, and sentence, his application for the issuance of a writ of habeas corpus must now be denied.

Judgment will be entered accordingly.