## Commonwealth v. Valentine

*Neil Strauss,* Assistant District Attorney, for Commonwealth.

*Louis Silverman,* for defendant.

GUARINO, *J.,* February 19, 1976—Nancy Valentine is charged with having murdered one Jose Rosario on October 5, 1975. Two days later, at about 2 p.m., she was surrendered to the Homicide Division of the Philadelphia Police Department by counsel. Because Detective Chitwood, who was assigned to the case, was detained on other duties, counsel left his name and word with Sergeant Gallagher that defendant would make no statement unless counsel was present. The police file was accordingly annotated with the name of Louis Silverman, Esq., as representing defendant.

Within a half hour, Detective Chitwood was at the police station and within 50 minutes, he was administering the Miranda warnings for the purpose of eliciting a statement from defendant, without, however, alerting defense counsel. From 2:50 p.m. to 4:30 p.m., he interviewed defendant and obtained incriminating responses. While Detective Chitwood was aware that defendant was represented by Louis Silverman, Esq., he was not aware of the stipulation that defendant would make no statement and that she was not to be interrogated unless counsel was present.

The single crucial question is: Where counsel informs the police that his client will make no statement and that she wants counsel present at any interrogation, are the police justified in conducting an interrogation out of the presence of counsel?

"In all criminal prosecutions, the accused shall enjoy the right . . . to have assistance of Counsel for his defense.": U. S. Constitution, Amendment VI. He has the "right to be heard by himself and his counsel.": Pa. Constitution Art. 1, sec. 9. Even without this latter provision, the fourteenth amendment to the United States Constitution that "[No] State shall deprive any person of life, liberty, or property, without due process of law," makes the sixth amendment applicable to the State: Johnson v. Zerbst, 304 U. S. 458, 585 S. Ct. 1019 (1938); Gideon v. Wainright, 372 U. S. 335, 83 S. Ct. 799 (1963); Hamilton v. Alabama, 368 U. S. 52, 82 S. Ct. 157 (1961).

Unlike the right to a jury trial, the right to counsel was not a basic right in the common law heritage.[1] Although it had been enshrined in both the Federal and State Constitutions for nearly 200 years, it did not bloom into constitutional proportions until very recent times. In medieval times, as well as in the time of Coke, representation of an accused at a stage earlier than the trial was discouraged and frowned upon. Lest he be accused of collusion, the lawyer rendered no service until the trial, but he was not permitted to present evidence or develop the facts.[2] At trial, his function was limited to raising points of law.[3]

---

1. Betts v. Brady, 316 U. S. 455, 465-71, 62 S. Ct. 1252 (1942). Cooley Constitutional Limitations, 696-700 (Carrington Ed., 1927).

2. Counsel at Interrogation, 73 Yale Law Journal 1022-23. See also 4 Blackstone, Commentaries, 355 (1899). Only in felony cases was counsel barred from assisting in preparation of facts.

3. Counsel at Interrogation, 73 Yale Law Journal 1022.

In those days, pretrial investigations were simple and largely in the hands of private persons.[4] The encounter between the accused and his accusers did not actually take place until the time of the trial. It was then that defendant was in jeopardy of losing life, liberty and property and when counsel could be of assistance.[5] At the trial stage, any attorney present, whether he represented defendant or not was permitted to intervene amicus curiae to raise points of law in the interest of keeping the trial free of errors.[6] It was not until 1718 that Pennsylvania passed a law that "upon trial of . . . a capital crime . . . learned counsel [shall be] assigned to the prisoner.": Laws of Pennsylvania, 134 Dallas Ed. 1797. By the time of the adoption of the Sixth Amendment, most of the Colonies had recognized to some degree a limited right to counsel.[7]

With the advent of the modern police late in the nineteenth century and the concomitant development of police investigative techniques of ferreting out the offender and interrogating him,[8] the station house became a focal point of confrontation between the State and the accused.[9] For the friendless and isolated indigent, in particular, the hostile prosecutorial atmosphere of the station house was more forbidding than the courthouse. If counsel was important in the latter, he was sorely needed in the former milieu, where the police were con-

---

4. Counsel at Interrogation, 73 Yale Law Journal 1035.

5. Counsel at Interrogation, 73 Yale Law Journal 1022.

6. 3 Coke. Institute 29.

7. Counsel at Interrogation, 73 Yale Law Journal 1030-31.

8. 1 Stephen, 501-03; Radzinowicz, History of Criminal Law, 28-31 (1948).

9. 1 Stephen, 194-96.

ducting interrogation with little respect for the accused's Fifth Amendment right to remain silent. Despite this shift of the citizen-State encounter, the courts, hobbled by the uncertain history of the right to counsel, were slow in bringing it to the station house. From 1791 to 1932, there are practically no cases defining the constitutional nature and the extent of the right. It comes as no surprise that when the right to counsel was extended to cover the indigent it meant right to counsel *at the trial:* Johnson v. Zerbst, supra; Gideon v. Wainright, supra. The right meant the right of the indigent to counsel at his State trial. It was not until Hamilton v. Alabama, supra, that the Federal court declared the preliminary hearing a critical stage of a criminal proceeding where defendant was entitled to counsel. In White v. Maryland, 373 U. S. 59, 83 S. Ct. 1050 (1963), the concept of the right to counsel was further expanded to include an accused who contemplated pleading guilty. Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199 (1964), mandates the presence of counsel at a pre-indictment police-controlled interrogation intent on eliciting a confession. When the Escobedo court[10] threw out an uncounselled confession because the police had purposefully refused counsel access to his client, it insured defendant's right to counsel at the station house interrogation. From this, Miranda[11] was no giant step when it held that an accused is entitled to counsel at a custodial police interrogation proceeding to protect defendant's Fifth Amendment right to remain si-

---

10. Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758 (1964).

11. Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602 (1966).

lent and to offset possible unfair coercive police practices.[12] In 1967, just one year after Miranda, the Supreme Court employed a similar methodology when it appended the right to counsel to the right to confront witnesses to ensure fair identification procedures: United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926 (1967).

With this brief history as a backdrop, we turn to the issue raised in the instant case. Nancy Valentine had the prescience to engage counsel at the station house. On her behalf, counsel invoked the Fifth and Sixth Amendments. Specifically, he was to tell Sergeant Gallagher that his client had elected to remain silent and that she was opting for counsel at any police-initiated interrogation. "When one states that he wants an attorney, the interrogation ceases until an attorney is present . . . without the right to cut off questioning, the setting of in-custody interrogation operates . . . to overcome free choice in producing a statement": 384 U. S. at 474.

The right to counsel does not purport a deaf, dumb and blind agent; the right to counsel would be of little value if it did not comprehend the right to be heard by one learned in the science of the law who will protect and defend the interest of his client. See Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55 (1932). When Mr. Silverman told the police that his client opted to stand silent and wanted an attorney present during custodial interrogation, he spoke for Nancy Valentine; he had no need to speak for himself. For the police to have initiated interrogation as soon as counsel was out of sight negatives Mrs. Valentine's manifest reliance on

12. Ibid. at page 470.

counsel, and deprives her of two fundamental constitutional rights, the right to counsel and the right to remain silent. This negative attitude toward counsel was condemned by the Miranda court:

"If the individual desires to exercise his privilege, he has the right to do so. This is not for the authorities to decide. An attorney may advise his client not to talk to police until he has had an opportunity to investigate the case, or he may wish to be present with his client during any police questioning. In doing so an attorney is merely exercising the good professional judgment he has been taught. This is not a cause for considering the attorney a menace to law enforcement. He is merely carrying out what he is sworn to do under his oath—to protect to the extent of his ability the rights of his client. In fulfilling this responsibility the attorney plays a vital role in the administration of criminal justice under our Constitution.": 384 U. S. at pages 480-481.

There can be no distinction between a situation where defendant personally invokes his right and where he authorizes counsel to do so, without destroying the right. Such a distinction is repugnant to the right of an accused to counsel at any interrogation designed to elicit a confession. The constitutional mandate that the police must cease interrogation where the right is invoked does not mean that a defendant may not, at some later time, change his mind. What it means is that the police may not thereafter resume questioning on their own initiative but must await the change of heart without any prodding. To carry Commonwealth's contention that the police may retest defendant's determination after his attorney leaves the precinct to its logical conclusion flies in the

face of Miranda's specific prohibition. It is a throwback to the situation which was declaimed by the court in Escobedo.

Today, for reasons set forth, I hold, as a necessary corollary of the Miranda ruling that, where counsel invokes the right to counsel by specifically telling the police that his client wants counsel at any questioning which is designed to elicit a confession, the police are precluded from initiating questioning in the absence of counsel. An uncounselled confession obtained after a demand for counsel either by defendant or his attorney is inadmissible into evidence as violative of the right to counsel.

Accordingly, the motion to suppress is granted.