# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 9, 2012 Session

## STATE OF TENNESSEE v. ERNEST DODD

**Appeal from the Circuit Court for Warren County**
**No. F-12726    Larry B. Stanley, Judge**

---

**No.  M2011-02259-CCA-R3-CD - Filed May 23, 2013**

---

Appellant, Ernest Dodd, was indicted by the Warren County Grand Jury in 2010 along with three other defendants for initiating a process intended to result in the manufacture of methamphetamine and promoting the manufacture of methamphetamine.  Appellant was convicted by a jury of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine.  As a result, Appellant was sentenced to an effective sentence of nineteen years at thirty-five percent.  After the denial of a motion for new trial, Appellant filed a timely notice of appeal.  On appeal, he presents the following issues: (1) whether the trial court improperly denied Appellant's motion in limine to exclude photographs of precursors to manufacturing methamphetamine; (2) whether the evidence was sufficient to support the convictions; (3) whether the trial court imposed an excessive sentence; and (4) whether the convictions should be reversed for cumulative error.   After a review of the record, we determine: (1) that the trial court properly admitted photographs of the precursors to manufacturing methamphetamine where the actual evidence was destroyed as hazardous material; (2) the evidence was sufficient to support the convictions; and (3) the trial court properly sentenced Appellant.  Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

C. Brent Keeton, Manchester, Tennessee for the appellant, Ernest Dodd.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; and Lisa Zavogiannis, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In July of 2010, the Warren County Sheriff's Office was running surveillance on the apartment of Lance and Connie Vogel. Mrs. Vogel had been used by the police before as an informant for information about different people and crimes on the street level. During the surveillance, Marc Martin, an investigator, saw Ronnie Minton and Appellant leaving the Vogel's apartment. As Appellant left, Detective Tony Jenkins who was assisting in the surveillance of the apartment went to the door of the apartment and immediately smelled a strong odor of methamphetamine and air freshener. Investigator Martin spoke with Appellant, whom he had known for quite some time. Investigator Martin described Appellant as "enraged."

Appellant consented to a search of his person. There was nothing on his person. Appellant gave a statement to police in which he explained that the police did not find anything on his person because he saw police coming and ate a bag of methamphetamine. Police found several cut straws and a Coleman can in the truck in which Appellant was riding. The truck belonged to co-defendant Minton. Investigator Martin testified that the items by themselves were not "anything" but that people often snorted methamphetamine through cut straws.

Appellant gave a statement in which he admitted to smoking methamphetamine and eating a bag of methamphetamine. He denied manufacturing methamphetamine. Appellant admitted that he spent the night at the Vogel's apartment and went to the store with co-defendant Minton to look for lithium batteries. Appellant stated that he would have smelled the methamphetamine if it were cooking while he was in the apartment.

A search warrant was obtained for the Vogel apartment where officers seized a large number of known precursors to the manufacture of methamphetamine. As a result, Appellant, Mr. and Mrs. Vogel, and Mr. Minton were indicted by the Warren County Grand Jury for one count of initiating a process intended to result in the manufacture of methamphetamine and one count of promoting the manufacture of methamphetamine.[1]

---

[1] The cover page of the indictment indicates that there were actually three counts to the indictment, one for initiating a process to manufacture methamphetamine and two for promoting the manufacture of methamphetamine. However, the following pages include only counts one and two. It is unclear what became of count three.

At trial, Mrs. Vogel testified that Appellant smoked methamphetamine on aluminum foil at the apartment. Mrs. Vogel personally observed Appellant with scales, filters, lye, cold packs, and pills on the floor of the apartment. Mrs. Vogel testified that Appellant placed a filter on the scales and poured out the lye. She claimed that she took her medicine and went to bed while the men cooked the methamphetamine.

Mr. Vogel testified that he pled guilty to the charges he received in this case and got a total effective sentence of forty years. He admitted that he cooked methamphetamine and confirmed that Appellant was at his apartment on the night in question. According to Mr. Vogel, the three men cooked and consumed methamphetamine that night at the apartment. Appellant participated by weighing "some stuff out" and using the container of lye. Appellant also cut open the cold packs to access the ammonium nitrate. He poured this substance in a bag. Appellant also "had a jug fixed up with a hose coming out of it and was going to gas off what he had poured off of a shake jug" while Mr. Vogel dropped aluminum foil balls into the muriatic acid to cause the reaction. Mr. Vogel admitted that he sprayed air freshener and turned on the exhaust fan in order to try to cover up the smell.

Appellant's thirteen-year-old son, Dakota Bennett, testified for the defense. Mr. Bennett testified that he overhead a conversation between Mrs. Vogel and Appellant in which she stated that Appellant had nothing to do with cooking methamphetamine in this case.

Devin Carter, a close friend of Appellant, stopped by the Vogel's apartment on the night of July 15, 2012. He got "into it" with Mr. Vogel. At one point, Mr. Vogel pulled out a knife and stabbed the television. Mr. Carter did not see any evidence of methamphetamine cooking but admitted that he was only at the apartment for about ten minutes.

At the conclusion of the proof, the jury found Appellant guilty of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine. The trial court sentenced Appellant as a Range II, multiple offender to nineteen years for the conviction for initiating a process to manufacture methamphetamine and four years for the conviction for attempt to promote the manufacture of methamphetamine. The trial court ordered the sentences to be served concurrently.

After the denial of a motion for new trial, Appellant initiated a direct appeal of his convictions and sentence. On appeal, he argues that the evidence is insufficient, his sentence is excessive, the trial court erred by admitting photographic evidence of the precursors to the methamphetamine manufacturing process that were destroyed, and his convictions should be reversed due to cumulative error.

*Admission of Photographs of Precursors of Methamphetamine Production*

On appeal, Appellant argues that evidence of methamphetamine manufacturing was improperly destroyed by the State and could have provided fingerprint evidence that would have exonerated Appellant. Further, he insists that the photographs of items found during the search of the apartment should have been excluded as overly prejudicial. The State, on the other hand, argues that all items in the apartment had to be destroyed because of contamination and the photographs were the only safe way to show the evidence. The trial court admitted the photographs into evidence.

Prior to trial, Appellant filed a motion in limine to exclude photographs of the precursors of manufacturing methamphetamine that were found during the execution of the search warrant at the Vogel's apartment. The items were collected and later destroyed as hazardous materials. Investigator Martin testified that it was essential to clear the residence of the items due to the hazardous nature of methamphetamine production. Investigator Martin authenticated the photographs at the hearing and testified that anything else that was in the apartment separate and apart from the precursors was contaminated by the methamphetamine production. In fact, the apartment was quarantined for public safety. The trial judge in ruling the photographs were admissible stated:

> [T]he evidence in a methamphetamine production case is 99 percent of the time hazardous material when it's involved or maybe a hundred percent of the time when it's actually involved in the making and the way I took it was that's what he takes out, the things that were in contact, that were involved in the actual process of making it, that is very hazardous material and that's hazmatted and sent off and destroyed and it has to be and that's the way it's done and the State does not have a duty to preserve that.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial.[2] To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland*, 373 U.S. 83, 87(1963). Further, the prosecution has a duty to turn over

---

[2]"As a general rule, . . . a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome." *State v. Ferguson*, 2 S.W.3d 912, 914 n.3 (Tenn. 1999) (citing *Betts v. Brady*, 316 U.S. 455, 464-65 (1942); *Watkins v. State*, 393 S.W.2d 141, 144 (Tenn. 1965); *Lofton v. State*, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994)).

exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

Additionally, the Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases. . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

In *State v. Ferguson*, the defendant was arrested for driving under the influence. The videotape of various sobriety tests performed by the defendant was inadvertently taped over before his trial. *Ferguson*, 2 S.W.3d at 914. The defendant appealed arguing that the State violated his Due Process rights by failing to preserve the videotape. In its review of defendant's issue, our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence has deprived a defendant of a fair trial. *Id.* at 917. The initial analytical step in this test for determining whether there was any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). The Court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." *Id.* Accordingly, those factors include: "(1) The degree of negligence involved; (2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) The sufficiency of the other evidence used at trial to support the conviction." *Id.* at 917. "If, after

considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges." *Id.* However, dismissal is but one of the trial judge's options. *Id.*

In *State v. Tony Best*, No. E2007-00296-CCA-R3-CD, 2008 WL 4367529, (Tenn. Crim. App., at Knoxville, Sept. 25, 2008) , *perm. app. denied*, (Tenn. Mar. 16, 2009), a case strikingly similar to the case herein, a defendant appealed based upon *Ferguson* regarding the State's destruction of methamphetamine components. 2008 WL 4367529, at *12. The defendant in that case argued that the State destroyed the methamphetamine components before the defendant was allowed to test them for fingerprints to prove that they were not his. *Id.* In our analysis of whether or not the items were of "apparent exculpatory value" we pointed out the following:

> This court has previously examined the issue of the State's duty to preserve evidence upon which the defendant could have performed scientific testing that the defendant claims may have yielded exculpatory results. On the one hand, the State is not required to investigate cases in any particular way: "Due process does not require the police to conduct a particular type of investigation. Rather, the reliability of the evidence gathered by the police is tested in the crucible of a trial at which the defendant receives due process." *State v. Terry W. Smith*, No. 01C01-9609-CC-00404, 1998 WL 918607, at *14 (Tenn. Crim. App. at Nashville, Dec. 31, 1998); . . . . Moreover, "[i]t is not the duty of this Court to pass judgment regarding the investigative techniques used by law enforcement unless they violate specific statutory or constitutional mandates." *State v. Robert Earl Johnson*, No. M2000-01647-CCA-R3-CD, 2001 WL 1180524, at *17 (Tenn. Crim. App. at Nashville, Oct. 8, 2001). Accordingly, when the police have not conducted a fingerprint analysis, there is typically no duty to preserve what is essentially nonexistent evidence. *See State v. Kenneth Clay Davis*, No. E2006-01459-CCA-R3-CD, 2007 WL 1259206, at *4 (Tenn. Crim. App. at Knoxville, Apr. 30, 2007), *perm. to appeal denied*, (Tenn. 2007) (holding with regard to the absence of a recording of the traffic stop that the "State cannot destroy evidence that does not exist"); *State v. Randall S. Sparks*, No. M2005-02436-CCA-R3-CD, 2006 WL 2242236, at *5 (Tenn. Crim. App. at Nashville, Aug. 4, 2006) (holding that State had no duty to preserve recordings of drug transactions because recordings did not exist); *see also John Darryl Williams-Bey v. State*, No. M2005-00709-CCA-R3-PC, 2006 WL 2242263, at *7 (Tenn. Crim. App. at Nashville, Aug. 4, 2006) (affirming post-conviction court's finding that counsel was not ineffective for failing to seek non-existent fingerprint evidence or curative jury instruction therefor).

*Tony Best*, 2008 WL 4367529, at *13-14.

In the case herein, we determine that the precursors did not "possess an exculpatory value that was apparent before the evidence was destroyed, and [were] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Investigator Martin testified at the hearing that it was not common practice to fingerprint items used in the manufacture of methamphetamine because they are contaminated. Further, the items were hazardous materials and could not be preserved for trial. Appellant likens his situation to that in *State v. Lonnie T. Lawrence*, No. E2007-0114-CCA-R9-CD, 2008 WL 704355 (Tenn. Crim. App., at Knoxville, Mar. 17, 2008), in which the State argued that the trial court erroneously suppressed eighteen photographs of evidence of methamphetamine production where the officers had no duty to preserve the evidence because it did not possess exculpatory value and comparable evidence was available to the defendants. In *Lonnie T. Lawrence*, evidence of methamphetamine production was housed in a shed separate and apart from the residence that was on the property. Photographs were taken of items found in the house that could have been used for methamphetamine production. These items were destroyed even though it was not clear that they had been tainted or were dangerous. This Court determined that "the State had a duty to preserve the evidence that was located inside the house and that did not appear to be tainted or dangerous." The case herein is distinguishable. In the case herein, all of the items related to the methamphetamine production were located in the apartment along with the defendant's belongings. According to the testimony, the entire apartment was quarantined after removal of the hazardous materials. The State was not under a duty to preserve the evidence. Therefore, the photographs of the items were properly admissible. The trial court did not abuse its discretion. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Next, Appellant argues that the evidence was not sufficient to support his convictions because they were based on circumstantial evidence. Further, Appellant argues he had no possessory interest in the location that the crime took place and did not have anything on his person or in his possession to indicate his guilt. Lastly, Appellant complains that the statements of the co-defendants were uncorroborated. The State, on the other hand, insists the evidence was sufficient because the proof shows that Appellant was an active participant in the process.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of

the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence. *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 599, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

Of course, a criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (citing *State v. Stout*, 46 S.W.3d 689, 696 (Tenn. 2001); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)). This principle has been described as follows:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact

establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

*Bigbee*, 885 S.W.2d at 803 (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Whether sufficient corroboration exists is for the jury to determine. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001).

Appellant was convicted of initiating a process to manufacture methamphetamine. Tennessee Code Annotated section 39-17-435 makes it an offense for a person to "knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." It is not a defense if "the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed." T.C.A. § 39-17-435(b). "Initiates" is defined in the statute as "begin[ing] the extraction of an immediate methamphetamine precursor from a commercial product, . . . begin[ing] the active modification of a commercial product for use in methamphetamine creation, or . . . heat[ing] or combin[ing] any substance or substances that can be used in methamphetamine production." *Id.* § 39-17-435(c).

Appellant was also convicted of attempt to promote the manufacture of methamphetamine. A person who promotes methamphetamine manufacture when they:

Sell[], purchase[], acquire[], or deliver[] any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use[.]

T.C.A. § 39-17-433(a)(1).

Viewing the evidence in a light most favorable to the State, the proof offered at trial showed that Appellant was involved in the cooking of methamphetamine at the Vogel's apartment. According to testimony from Ms. Vogel, Appellant weighed the lye, cut open the cold packs, and poured the ammonium nitrate into a plastic bag. Mr. Vogel stated that Appellant was holding a jug with a hose coming out of it and operated the hose while Mr.

Vogel dropped aluminum foil balls in to the mixture in the jug to cause a reaction. Appellant himself admitted to police that he was at the apartment on the night of the crime and that he used methamphetamine. Appellant was seen leaving the apartment just moments before the authorities went to the door of the apartment where they smelled a strong odor of methamphetamine and air freshener. When a search warrant was executed, numerous precursors for methamphetamine production were located in the apartment. Further, Appellant admitted that he concealed methamphetamine from the police by eating it. As detailed above, the independent testimony of the officers conducting surveillance coupled with Appellant's admission of ingesting methamphetamine and his proximity to the apartment at the time when methamphetamine was being produced, although not extending to every part of the co-defendants' testimony, sufficiently corroborated the testimony of both Mr. and Mrs. Vogel. Thus, the jury had before it sufficient evidence to conclude that Appellant was guilty of initiating a process to manufacture methamphetamine and attempt to promote the manufacture of methamphetamine. Appellant is not entitled to relief on this issue.

*Sentencing*

Appellant argues that trial court erred by sentencing him to the maximum sentence in the range. The State argues that the trial court properly considered all sentencing factors and sentenced Appellant as a Range II, multiple offender to a sentence within the range.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). We are to also recognize that Appellant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing;

and (8) the potential for rehabilitation or treatment.  T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> >
> > (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).  However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence.  *Carter*, 254 S.W.3d at 345.  "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

"The amended statute no longer imposes a presumptive sentence." *Carter*, 254 S.W.3d at 343.  As a result of the amendments to the Sentencing Act, our appellate review of the weighing of the enhancement and mitigating factors was deleted when the factors became advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* at 344.  Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.*  The trial court's weighing of various mitigating and enhancement factors is now left to the trial court's sound discretion. *Id.*

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001).  If our review reflects that "the trial court appl[ied] inappropriate mitigating

and/or enhancement factors or otherwise fail[ed] to follow the Sentencing Act, the presumption of correctness fails" and our review is de novo. *Carter*, 254 S.W.3d at 345.

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. Therefore, there is a presumption that the trial court's determination is correct. The trial court applied one mitigating factor, that the criminal conduct neither caused nor threatened serious bodily injury, under Tennessee Code Annotated section 40-35-113(1). The trial court attributed "no weight" to this factor because Appellant participated in "an extremely dangerous endeavor." The trial court applied one enhancement factor, that Appellant had "prior criminal convictions in addition to those necessary to establish the appropriate range," commenting that his criminal convictions were "simply atrocious." T.C.A. § 40-35-114(1). After application of the mitigating and enhancement factors, the trial court sentenced Appellant to nineteen years for the conviction for initiating a process to manufacture methamphetamine.

Appellant argues that the trial court should not have enhanced his sentence to nineteen years and should not have utilized statements made by Special Agent Mark Delaney from the Tennessee Bureau of Investigation in sentencing. Special Agent Delaney testified that Appellant spoke with him after counsel was appointed and Appellant told him that he had been manufacturing methamphetamine for quite some time and was "bragging about how many people he had taught to cook dope." However, Appellant acknowledges that the information was properly before the trial court because Appellant voluntarily initiated contact with law enforcement after counsel was appointed. Additionally, Appellant acknowledges that the trial court did not give this testimony much weight in consideration of the length of the sentence.

The record reflects that the trial court considered and dismissed each statutory mitigating factor other than the one that it applied. Further, the trial court considered and applied one enhancement factor. As stated above, the weight given to mitigating and enhancement factors is not a basis upon which a defendant may appeal to this Court. *See Carter*, 254 S.W.3d at 345. Appellant received a sentence within the range of punishment. Therefore, this issue is without merit.

*Cumulative Error*

Appellant argues that cumulative errors committed by the trial court necessitate a reversal of his convictions. Because we have determined that there was no error at trial, this issue is meritless.

-12-

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____

JERRY L. SMITH, JUDGE